[No. S133331. Nov. 13, 2006.]

DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Respondent;
DANIEL BECERRIL QUINTANAR, Real Party in Interest.

DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Respondent;
KV MART CO., Real Party in Interest.

DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Respondent;
RICHARD LEUN KIM, Real Party in Interest.

2

4

COUNSEL

John R. Pierce, Nicholas R. Loehr, Matthew G. Ainley, Thomas M. Allen and Kerry K. Winters for Petitioner.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Tom Greene and James Humes, Chief Assistant Attorneys General, Jacob A. Appelsmith and J. Matthew Rodriguez, Assistant Attorneys General, Silvia M. Diaz, Graeme E. Sharpe, Richard M. Frank and Joseph Barbieri, Deputy Attorneys General, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Solomon, Saltsman & Jamieson, Ralph Barat Saltsman, Stephen Warren Solomon, Ryan M. Kroll and Claire C. Weglarz for Real Parties in Interest.

OPINION

**WERDEGAR, J.**—The Department of Alcoholic Beverage Control (Department) has exclusive licensing authority over entities that sell alcoholic beverages. Its procedures for adjudicating whether licensees have violated the

terms of their licenses include an evidentiary hearing at which a Department prosecutor makes the Department's case to an administrative law judge (ALJ), and a second level of decisionmaking in which the Department's director or a delegee decides whether to adopt the ALJ's proposed decision. In the three consolidated cases here, consistent with standard Department procedure, the prosecutor prepared a summary of the evidentiary hearing and recommended resolution, which he then provided ex parte to the ultimate decision maker or decision maker's adviser.

■ While the state's administrative agencies have considerable leeway in how they structure their adjudicatory functions, they may not disregard certain basic precepts. One fairness principle directs that in adjudicative matters, one adversary should not be permitted to bend the ear of the ultimate decision maker or the decision maker's advisers in private. Another directs that the functions of prosecution and adjudication be kept separate, carried out by distinct individuals. California's Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.),[1] as overhauled in 1995, adopts these precepts by regulating and strictly limiting contacts between an agency's prosecutor and the officers the agency selects to preside over hearings and ultimately decide adjudicative matters. We conclude the Department's procedure violates the APA's bar against ex parte communications.

FACTUAL AND PROCEDURAL BACKGROUND

The Department is a unitary agency with the exclusive authority to license the sale of alcoholic beverages in California and to suspend or revoke licenses. (Cal. Const., art. XX, § 22.) As a unitary agency, it carries out multiple functions: "It is in the nature of administrative regulatory agencies that they function both as accuser and adjudicator on matters within their particular jurisdiction. Administrative agencies are created to interpret and enforce the legislative enactments applicable to the field in which they operate. That role necessarily involves the administrative agency in both determining when a licensee is in violation of the law, and taking action to correct such violations." (*Department of Alcoholic Bev. Control v. Alcoholic Bev. etc. Appeals Bd.* (*ALQ Corp.*) (1981) 118 Cal.App.3d 720, 726–727 [173 Cal.Rptr. 582].)

Like many state administrative agencies,[2] the Department exercises its adjudicatory power through a two-stage process. In the first (trial) stage,

[1] All further statutory references are to the Government Code unless otherwise indicated.

[2] See Asimow, *The Fiftieth Anniversary of the Administrative Procedure Act: Past and Prologue: The Influence of the Federal Administrative Procedure Act on California's New Administrative Procedure Act* (1996) 32 Tulsa L.J. 297, 300–301 (hereafter *California's New APA*).

a Department staff attorney, acting as prosecutor, and the licensee present their respective cases to an ALJ at an evidentiary hearing. The ALJ then makes factual findings, prepares a proposed decision, and submits it to the Department. (See § 11517, subd. (c)(1).) In the second (decision) stage, the Department's director or a delegee considers the proposed decision and elects to adopt it, modify it, reject it and remand for a new hearing, or reject it and decide the case on the record. (*Id.*, subd. (c)(2).)

The Department followed this procedure in each case here. Between May and August 2002, the Department filed accusations against real parties in interest Daniel Becerril Quintanar, KV Mart Co., and Richard Leun Kim (hereafter collectively the licensees). The Department alleged Quintanar's bartender sold beer to an obviously intoxicated customer and alleged clerks who worked for KV Mart Co. and Kim both sold alcoholic beverages to a 19-year-old decoy. In each case, at the trial stage, the ALJ considered the Department's and licensee's evidence and argument and issued a proposed decision dismissing the accusation, which was then referred to the Department for final action.

After the close of each administrative hearing but before the Department rendered its decision, the Department prosecutor prepared a report of hearing, a form document, and apparently sent it to the Department's chief counsel, but not to any of the licensees. As we will discuss, the reports of hearing prepared in these three cases are not part of the records, but copies of the generic form are. The generic form provides space for the prosecutor to summarize the issues and the evidence presented at the hearing and to recommend, with supporting reasons, a particular disposition of the case.

In each case, the Department rejected the ALJ's proposed decision to dismiss the accusation and substituted its own decision, suspending the licenses of Kim, Quintanar, and KV Mart Co. for periods of 15, 20, and 25 days, respectively.

The licensees appealed these adverse decisions to the Alcoholic Beverage Control Appeals Board (Board), a separate entity with limited appellate jurisdiction over the Department's decisions. (See Cal. Const., art. XX, § 22; Bus. & Prof. Code, § 23084.) They contended the Department had violated their due process rights because the decision maker, the Department's chief counsel, was the prosecutor's supervisor and a biased advocate rather than a neutral decision maker.

In connection with their appeals, the licensees each filed a motion to augment the record, seeking all documents available to the chief counsel at the time the Department rendered its decision, including the reports of

hearing. In opposition, the Department argued the documents sought were protected by the attorney-client privilege and work product doctrine and, in any event, the Board lacked authority to augment the record. The Board granted the motion in each case and ordered the Department to file its reports of hearing under seal within 21 days. The Department refused. Instead, after the time for production had expired, the Department reasserted its privilege claim and told the Board it would not acquiesce in the Board's order without further proof of legal authority supporting it. Thus, the reports of hearing do not appear in the record.

The Board heard argument in these three matters and reversed the Department's decisions. The Board concluded the Department's failure to screen its decision maker and the decision maker's advisers from communications with its prosecutors deprived the licensees of the right to a fair trial by a fair tribunal and constituted a due process violation. The Board also found the report of hearing was an ex parte communication between an agency's decision maker or decision maker's adviser (the Department's chief counsel) and a party (the Department's prosecutor) prohibited under the APA, and the Department had violated the APA by failing to make the report part of the administrative record, notify the parties of its inclusion, and allow the licensees an opportunity to respond.

The Department sought writ relief (see Bus. & Prof. Code, § 23090), but the Court of Appeal affirmed. It concluded the manner in which the Department had conducted its administrative hearings created an unacceptable risk of bias and unfairness. The Court of Appeal held the Department's practice of having the agency prosecutor prepare a report of hearing, including a recommended outcome, and forward it to the Department's chief counsel while a final Department decision was still pending, violated the licensees' due process rights. It ordered the Department to institute screening procedures preventing the agency prosecutor from communicating with the ultimate decision maker and any advisers while a proceeding was still pending and to henceforth exclude the report of hearing from the materials reviewed by the Department's decision maker.

We granted review to address how the APA and due process clause apply to a unitary administrative agency that combines prosecutorial and adjudicative functions in resolving administrative matters. Like the Court of Appeal, we confine our review to the question whether the Department "has proceeded in the manner required by law." (Cal. Const., art. XX, § 22, subd. (d); Bus. & Prof. Code, § 23090.2, subd. (b); see *Walsh v. Kirby* (1974) 13 Cal.3d 95, 103 [118 Cal.Rptr. 1, 529 P.2d 33].)

DISCUSSION

I. *The California Administrative Procedure Act*

█ Does the APA permit ex parte contacts between an agency's prosecutor and its ultimate decision maker or his or her advisers about the substance of the case, prior to the ultimate decision maker rendering a final decision? We conclude it does not.

A. *The APA: Historical Background*

California's original APA (Stats. 1945, ch. 867, § 1, p. 1626) was pioneering but limited. (*California's New APA, supra,* 32 Tulsa L.J. at pp. 298, 307; see generally *Hohreiter v. Garrison* (1947) 81 Cal.App.2d 384, 393–394 [184 P.2d 323].) It applied principally to licensing cases and covered only certain aspects of administrative practice. In particular, it said nothing about either ex parte communications or agency separation of functions.[3] (Recommendation: Administrative Adjudication by State Agencies (Jan. 1995) 25 Cal. Law Revision Com. Rep. (1995) pp. 55, 104–105 (hereafter Recommendation); *California's New APA, supra,* 32 Tulsa L.J. at p. 312.) A 1986 amendment added restrictions on ex parte contacts with ALJ's during the trial stage for some agencies, but continued to leave unregulated such contacts with agency heads during the decision stage. (See former § 11513.5, added by Stats. 1986, ch. 899, § 2, p. 3116; Recommendation, 25 Cal. Law Revision Com. Rep., *supra,* at pp. 104–105; *California's New APA, supra,* 32 Tulsa L.J. at p. 312.) In the absence of regulation, agency heads were free to discuss adjudicatory matters with whomever they pleased, both inside and outside the agency, subject only to whatever indefinite limits due process might impose.[4]

In 1987, the Legislature directed the California Law Revision Commission (Commission) to study administrative adjudication and propose reforms to the

---

[3] "Separation of functions in administrative law refers to structural arrangements that lodge responsibility for prosecution and advocacy in one group of agency personnel (the 'adversaries') and responsibility for adjudicatory decision-making in a different group of agency personnel ('the adjudicators'). There are two fundamentally different approaches to separation of functions. An external separation removes the adversaries entirely from agencies that have adjudicating responsibilities. Internal separation leaves these functions within the same agency but prevents the same people from discharging both adversary and adjudicatory functions." (Asimow, *Toward a New California Administrative Procedure Act* (1992) 39 UCLA L.Rev. 1067, 1152 (hereafter *Toward a New California APA*), reprinted at 25 Cal. Law Revision Com. Rep., *supra,* at pp. 321, 406; see also *California's New APA, supra,* 32 Tulsa L.J. at pp. 312, fn. 88, 314.)

[4] There is some indication agency heads may have done so and that the culture within various administrative agencies may have supported unfettered contacts. (Recommendation, 25 Cal. Law Revision Com. Rep., *supra,* at pp. 104–105; *Toward a New California APA, supra,* 39 UCLA L.Rev. at p. 1130, reprinted at 25 Cal. Law Revision Com. Rep., *supra,* at p. 384; *California's New APA, supra,* 32 Tulsa L.J. at pp. 312, 313, fn. 92, 314.)

APA. (Sen. Conc. Res. No. 12, Stats. 1987 (1987–1988 Reg. Sess.) res. ch. 47, par. 24, p. 5899; see Recommendation, 25 Cal. Law Revision Com. Rep., *supra*, at p. 75; *California's New APA, supra*, 32 Tulsa L.J. at p. 299, fn. 11.)[5] After seven years, the Commission came back with extensive recommendations. It declared: "Fundamental fairness in decisionmaking demands both that factual inputs and arguments to the decisionmaker on law and policy be made openly and be subject to argument by all parties." (Recommendation, 25 Cal. Law Revision Com. Rep., *supra*, at p. 105.) Consistent with this view, the Commission proposed an "administrative adjudication bill of rights," which inter alia would require state agencies to limit reliance on ex parte contacts in their decisionmaking and adopt some internal separation of functions. Senate Bill No. 523 (1995–1996 Reg. Sess.) adopted the Commission's proposed administrative adjudication bill of rights virtually unchanged, including its limits on ex parte contacts (article 7) and its internal separation of function provisions (articles 6 and 7).

### B. *The APA's Ex Parte and Separation of Function Provisions*

Article 7, modeled on provisions of the federal Administrative Procedure Act and the 1981 Model State Administrative Procedure Act (see *California's New APA, supra*, 32 Tulsa L.J. at p. 315), broadly prohibits ex parte contacts between parties, including agency parties, and decision makers during administrative adjudicative proceedings. "While the proceeding is pending there shall be *no communication, direct or indirect, regarding any issue in the proceeding*, to the presiding officer from an employee or representative of an agency that is a party . . . without notice and opportunity for all parties to participate in the communication." (§ 11430.10, subd. (a), italics added.) A "presiding officer" is defined as an officer who presides over an evidentiary hearing (§ 11405.80), but other provisions of article 7 expressly extend this prohibition to all decision makers, including agency heads and their delegees, whether or not they preside over an evidentiary hearing: "Subject to subdivision (b) [governing ratemaking proceedings], the provisions of this article governing ex parte communications to the presiding officer also govern ex parte communications in an adjudicative proceeding to the agency head or other person or body to which the power to hear or decide in the proceeding is delegated." (§ 11430.70, subd. (a).)[6] The Commission comments to section 11430.10 reiterate that section 11430.70 expands section

---

[5] Professor Asimow, the author of *California's New APA* and *Toward a New California APA*, cited herein, was retained by the Commission as its principal adviser in reviewing the APA and proposing reforms. (Recommendation, 25 Cal. Law Revision Com. Rep., *supra*, at pp. 60–61, 75.) We previously have found Professor Asimow's work on administrative law for the Commission highly persuasive. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12–14 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

[6] The APA's linguistic distinction between "presiding officers" and "agency heads" adopts a suggestion from Professor Asimow, who proposed "that a California statute use the term

11430.10's scope: "This provision [section 11430.10] also applies to the agency head, or other person or body to which the power to hear or decide is delegated. See Section 11430.70 (application of provisions to agency head or other person)." (Cal. Law Revision Com. com., 32D West's Ann. Gov. Code (2005) foll. § 11430.10, p. 309.)

■ Other provisions slightly narrow section 11430.10's blanket prohibition. Two are pertinent here. First, communications are permitted regarding uncontroversial procedural matters. (§ 11430.20, subd. (b).) Second, an agency decision maker may receive advice from *nonadversarial* agency personnel: An otherwise prohibited ex parte communication will be allowed if it "is for the purpose of assistance and advice to the presiding officer from a person who has not served as investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage. An assistant or adviser may evaluate the evidence in the record but shall not furnish, augment, diminish, or modify the evidence in the record." (§ 11430.30, subd. (a).)[7] None of the exceptions permit prosecutors and other adversarial agency employees to have off-the-record contact about substantive issues with the agency head, or anyone to whom the agency head delegates decisionmaking authority, during the pendency of an adjudicative proceeding. Thus, the APA sets out a clear rule: An agency prosecutor cannot secretly communicate with the agency decision maker or the decision maker's adviser about the substance of the case prior to issuance of a final decision.[8]

■ This rule enforces two important procedural precepts. First, it promotes neutral decisionmaking by requiring a limited internal separation of functions. Procedural fairness does not mandate the dissolution of unitary agencies, but it does require some internal separation between advocates and decision makers to preserve neutrality. (See *Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, 1585 [5 Cal.Rptr.2d 196] ["A different issue is presented,

---

'presiding officer' to refer only to the person who conducts the initial hearing, which is a more natural meaning for the phrase. The statute should then be drawn so that the prohibition on ex parte contact covers presiding officers, agency heads, and any other person engaged in making adjudicatory decisions." (*Toward a New California APA, supra,* 39 UCLA L.Rev. at p. 1135, fn. 220, reprinted at 25 Cal. Law Revision Com. Rep., *supra,* at p. 389.)

[7] Again, section 11430.70 by its express terms expands the scope of this rule to encompass all decision makers, not just presiding officers. (§ 11430.70, subd. (a); Cal. Law Revision Com. com., 32D West's Ann. Gov. Code, *supra,* foll. § 11430.30, p. 313.)

[8] The Court of Appeal drew no distinction between communications between a prosecutor and a final agency decision maker on the one hand, and those between a prosecutor and the decision maker's adviser, on the other. Nor do we. Each form of contact equally compromises the protections the APA's adjudicative bill of rights sought to adopt; nothing in the APA contemplates permitting an agency to accomplish through secondhand communications what is forbidden through firsthand communications. The Department does not contend that if the APA bars communications between a prosecutor and final decision makers, it should be construed to still permit communications between the prosecutor and that decision maker's advisers.

however, where *advocacy* and decisionmaking roles are combined. By defini-tion, an advocate is a partisan for a particular client or point of view. The role is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator"]; see also *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 94, 97–98 [133 Cal.Rptr.2d 234]; *Toward a New California APA, supra,* 39 UCLA L.Rev. at pp. 1166–1172, reprinted at 25 Cal. Law Revision Com. Rep., *supra,* at pp. 420–425.) Second, the rule preserves record exclusivity. "The decision of the agency head should be based on the record and not on off-the-record discussions from which the parties are excluded." (Cal. Law Revision Com. com., 32D West's Ann. Gov. Code, *supra,* foll. § 11430.80, p. 322; see also *English v. City of Long Beach* (1950) 35 Cal.2d 155, 158–159 [217 P.2d 22] ["[T]he right of a hearing before an administrative tribunal would be meaningless if the tribunal were permitted to base its determination upon information received without the knowledge of the parties"].)

The Department takes issue with this rule. It argues that even under the revised APA, limits on ex parte communications extend only to communica-tions during the trial stage, not to those during the decision stage. The Department reasons that section 11430.70 limits contacts with agency heads and other decision makers only during "adjudicative proceeding[s]" (§ 11430.70, subd. (a)), an "adjudicative proceeding" is defined as "an evidentiary hearing for determination of facts pursuant to which an agency formulates and issues a decision" (§ 11405.20), and thus agency heads and their delegees are limited in their contacts only when they preside over evidentiary hearings. After the close of the evidentiary hearing, according to the Department, the agency's prosecutor may secretly advise the agency head without violating any APA proscription.

■ We are not persuaded. We do not construe statutory language in isolation, but rather as a thread in the fabric of the entire statutory scheme of which it is a part. (*Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1135 [90 Cal.Rptr.2d 804, 988 P.2d 1083].) Section 11405.10 expressly qualifies the applicability of the APA's definitions: *"Unless the provision or context requires otherwise,* the definitions in this article govern the construc-tion of this chapter." (Italics added.) Here, as we shall explain, the context of the rest of article 7 and the legislative history behind it make clear section 11430.70, subdivision (a) was not intended to incorporate the narrow section 11405.20 definition of "adjudicative proceeding," but was intended to apply more broadly to limit ex parte contacts in all nonratemaking proceedings that employ an evidentiary hearing *in the course of adjudicating* the rights of a single party.

As originally introduced, section 11430.70 provided in total: "The provi-sions of this article governing ex parte communications to the presiding

officer also govern ex parte communications to the agency head or other person or body to which the power to hear or decide in the proceeding is delegated." (Sen. Bill No. 523 (1995–1996 Reg. Sess.) § 16, as introduced Feb. 21, 1995.) This version clearly extended the limit on ex parte communications from the administrative hearing (trial) stage to the final decision stage.

As drafted, however, the provision would have prohibited ex parte contacts in individual ratemaking proceedings. (See Cal. Law Revision Com. com., 32D West's Ann. Gov. Code, *supra*, foll. § 11405.50, p. 265 ["[R]ate making and licensing determinations of specific application, addressed to named or particular parties such as a certain power company or a certain licensee, are decisions subject to this chapter"].) The section was subsequently amended, not to confine its application to the trial stage, but to clarify that it did not extend to individual ratemaking proceedings. The original version of section 11430.70 was redesignated as subdivision (a), language limiting it to an "adjudicative proceeding" was inserted, and a new subdivision (b) was added, providing: "An ex parte communication to the agency head or other person or body to which the power to hear or decide in the proceeding is delegated is permissible *in an individualized ratemaking proceeding* if the content of the communication is disclosed on the record and all parties are given an opportunity to address it in the manner provided in section 11430.50." (Sen. Bill No. 523 (1995–1996 Reg. Sess.) § 21, as amended Aug. 30, 1995, italics added.) The author, Senator Kopp, explained: "This technical amendment responds to So[uthern] Cal[ifornia] Edison concern that the ex parte communication prohibition should not apply in rulemaking [*sic*: ratemaking] proceeding[s]. . . . [¶] Gov't Code § 11430.70 amended to allow ex parte communication in individualized ratemaking proceeding if disclosed on the record and parties have an opportunity to comment. This is the approach used by PUC." (Sen. Kopp, Sen. Appropriations Com., amendments to Sen. Bill No. 523 (1995–1996 Reg. Sess.) Aug. 23, 1995; see also Recommendation, 25 Cal. Law Revision Com. Rep., *supra*, at p. 86; *California's New APA*, *supra*, 32 Tulsa L.J. at pp. 305–306 & fn. 45.) Thus, the "adjudicative proceeding" limit in section 11430.70, subdivision (a) was added as a way to distinguish individual ratemaking proceedings (not covered) from individual nonratemaking proceedings (covered), apparently without heed to the cross-definition of "adjudicative proceeding" in section 11405.20.

The Commission's comments to section 11430.30, which further defines the extent of permissible contacts, likewise reflect the understanding that the limits on contacts with agency heads and other decision makers apply at both the trial stage and the decision stage.[9] The comments note: "This provision is

[9] "Because the official comments of the California Law Revision Commission 'are declarative of the intent not only of the draftsman of the code but also of the legislators who subsequently enacted it' [citation], the comments are persuasive, albeit not conclusive,

not limited to agency personnel, but includes participants in the proceeding not employed by the agency. A deputy attorney general who prosecuted the case at the administrative trial level, for example, *would be precluded from advising the agency head or other person delegated the power to hear or decide at the final decision level*, except with respect to settlement matters." (Cal. Law Revision Com. com., 32D West's Ann. Gov. Code, *supra*, foll. § 11430.30, p. 313, italics added.)

The more general legislative history behind Senate Bill No. 523 (1995–1996 Reg. Sess.) also demonstrates that the concerns of the Commission and Legislature extended beyond ex parte contacts with ALJ's issuing proposed decisions to ex parte contacts with the true, ultimate decision makers, the agency heads and their delegees. The Commission proposed proscribing ex parte communications with all agency decision makers, not just hearing officers. (Recommendation, 25 Cal. Law Revision Com. Rep., *supra*, at pp. 104–106.) More specifically, as Professor Asimow explained in the study that was submitted to the Legislature with the Commission's proposed reforms, an advocacy role could distort the advice one gave and thus it was critical to limit advice given by adversaries to the ultimate decision maker while a final decision was being made. (*Toward a New California APA*, *supra*, 39 UCLA L.Rev. at pp. 1166, 1177, reprinted at 25 Cal. Law Revision Com. Rep., *supra*, at pp. 420–421, 431.) Principles of fairness dictated that these final decisions should flow exclusively from the record, not from off-the-record submissions by either side. (*Toward a New California APA*, *supra*, 39 UCLA L.Rev. at p. 1167, reprinted at 25 Cal. Law Revision Com. Rep., *supra*, at p. 421.)

The Legislature adopted article 7 without significant change, and the committee reports describing the understanding of that article reflect equal concern with ex parte contacts at the trial and decision stages. Senate Bill No. 523 (1995–1996 Reg. Sess.) was intended to prohibit contacts with agency decision makers at all stages. (Assem. Com. on Appropriations, Rep. on Sen. Bill No. 523 (1995–1996 Reg. Sess.) as amended July 28, 1995, p. 2 [bill "[p]rohibits ex-parte communications with the decision maker in all state agency proceedings"]; Dept. of Finance, analysis of Sen. Bill No. 523 (1995–1996 Reg. Sess.) as amended July 28, 1995, p. 4 ["The proposed law would prohibit ex parte communications with the decision maker in all state agency proceedings. Current law prohibits ex parte contact with an ALJ employed by the Office of Administrative Hearings, but is silent as to ex parte communications to agency heads"].)

---

evidence of that intent." (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148 [132 Cal.Rptr.2d 341, 65 P.3d 807].)

■ The Department's construction would render superfluous section 11430.70, subdivision (a)'s extension of the limits on ex parte contacts to contacts with agency heads. Presiding officers, including agency heads who serve as presiding officers, are already constrained from engaging in ex parte communications elsewhere in article 7. (§ 11430.10, subd. (a) [no ex parte contacts with presiding officer]; § 11405.80 ["Presiding officer" includes agency head who presides over an adjudicative proceeding].) If an agency head is constrained *only* when he or she serves as a presiding officer, section 11430.70, subdivision (a) has no function. As is well settled, we will avoid constructions such as this that render statutory language surplusage. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 931 [22 Cal.Rptr.3d 530, 102 P.3d 915].)

The Department points to section 11517 and the Commission's related comments, which it asserts give it wide latitude to structure its adjudicative proceedings as it sees fit, in support of its argument that its prosecutors may advise its decision makers.[10] Section 11517 is beside the point. The Department may structure its decisionmaking however it sees fit, so long as it complies with the APA and related statutory and constitutional minimums. Nothing in either the superseded or current version of section 11517 purports to authorize procedures that run afoul of proscriptions spelled out elsewhere in the Government Code.

Finally, the Department relies on *Department of Alcoholic Bev. Control v. Alcoholic Bev. etc. Appeals Bd. (ALQ Corp.)*, *supra*, 118 Cal.App.3d 720, as approving its use of a confidential report of hearing procedure. In *ALQ Corp.*, a licensee sought discovery of any reports of hearing or other communications between hearing staff and the Department's decision makers. The Board held due process required disclosure of these communications, but the Court of Appeal reversed. It concluded due process did not authorize an inquiry by the Board into the agency decision makers' reasoning, the material the

---

[10] The Commission comments the Department cites as authority refer to a superseded version of the statute. Former section 11517, subdivision (b) provided in relevant part: "Thirty days after receipt of [a proposed ALJ decision], a copy of the proposed decision shall be filed by the agency as a public record and a copy shall be served by the agency on each party and his or her attorney. The filing and service is not an adoption of a proposed decision by the agency. The agency itself may do any of the following: [¶] (1) Adopt the proposed decision in its entirety. [¶] (2) Reduce or otherwise mitigate the proposed penalty and adopt the balance of the proposed decision. [¶] (3) Make technical or other minor changes in the proposed decision and adopt it as the decision. Action by the agency under this paragraph is limited to a clarifying change or a change of a similar nature that does not affect the factual or legal basis of the proposed decision." (Former § 11517, subd. (b), as amended by Stats. 1995, ch. 938, § 42, pp. 7163–7164, repealed and added by Stats. 1999, ch. 339, § 1.) The accompanying Commission comment explained in part: "Nothing in subdivision (b) is intended to limit the authority of an agency to use its own internal procedures, including internal review processes, in the development of a decision." (Com., 1995 Ann. Rep., 25 Cal. Law Revision Com. Rep., *supra*, at pp. 615, 732.)

licensee sought was irrelevant to the proceedings, and the Board lacked jurisdiction to require the Department to disclose any communications. (*Id.* at p. 728.)

■ *ALQ Corp.* was decided 14 years before the overhaul of the APA. Where previously the APA was silent on the subject of off-the-record communications with agency decision makers, now it regulates them. The Board is authorized to determine "whether the [D]epartment has proceeded in the manner required by law" (Cal. Const., art. XX, § 22, subd. (d); Bus. & Prof. Code, § 23084, subd. (b)); as such, it has jurisdiction to determine whether the Department has complied with statutes such as the APA. *ALQ Corp.* was decided on due process grounds, but insofar as it may be read more broadly to authorize contacts between an agency's prosecutor and its ultimate decision maker, or preclude Board or court inquiry into the occurrence of such contacts, it has been superseded by statute.

### C. *Application of the APA to Reports of Hearing*

The administrative adjudication bill of rights provisions of the APA apply to Department license suspension hearings. (See Gov. Code, § 11410.10 [provisions apply whenever evidentiary hearing is required by statute or constitutional right]; Bus. & Prof. Code, § 24300 [providing for license suspension hearing]; *Irvine v. State Bd. of Equalization* (1940) 40 Cal.App.2d 280, 284–286 [104 P.2d 847] [liquor license cannot be suspended or revoked without hearing].)

Did the Department's prosecutor and the Department's final decision maker or adviser have an impermissible ex parte contact? The Board and the Court of Appeal inferred as much. The Department's refusal to comply with the Board's order and produce its reports of hearing from these three cases leaves us somewhat in the dark.[11] However, the Department concedes a

---

[11] Notwithstanding the Department's objections, the Board had the authority to order disclosure. It was constitutionally empowered to determine whether the Department had issued its decision in compliance with all laws, including the APA. (Cal. Const., art. XX, § 22.) While it is true, as the Department notes, that the Constitution also limits the Board to consideration of the record before the Department (*ibid.*), we must harmonize these two provisions to the extent possible so that the limit imposed by one clause does not destroy the power granted by the other. (*People v. Garcia* (1999) 21 Cal.4th 1, 6 [87 Cal.Rptr.2d 114, 980 P.2d 829].) We interpret the record limit as applying to prevent parties from relitigating substantive matters by submitting new evidence, but not to prevent the Board from carrying out its obligation to determine whether the Department has complied with the law. The Department argues that ex parte contacts are not in the record (a virtual tautology) and thus the Board cannot consider them or direct that they be added to the record, whether or not the Department has considered them; if this is so, then the Department may violate the APA without sanction. To read this clause as the Department does, as further precluding inquiry into ex parte communications,

report of hearing was prepared in each case. At oral argument, it further conceded that the final decision in each case was made by either the Department's director or its chief counsel, and that both had access to the reports of hearing. In light of these concessions, we consider it established that the reports of hearing were provided to the agency's decision maker.

The Department argues the record contains no proof the reports of hearing were actually *considered* by the ultimate decision maker or his advisers, but neither does it deny this occurred. Whether the decision maker considered the reports of hearing is in any event beside the point. On the one hand, proof as to how a particular ex parte contact weighed in an agency decision maker's calculus would be impossible to come by without inquiry into matters beyond the ken of any court. On the other hand, the APA does not require such proof; perhaps because such proof is unattainable, the APA prophylactically outlaws any substantive communications or advice from an agency prosecutor to an agency decision maker. The party faced with such a communication need not prove that it was considered; conversely, the agency engaging in ex parte discussions cannot raise as a shield that the advice was *not* considered. Under the APA, the mere submission of ex parte substantive comments, without more, is illegal. (§ 11430.10, subd. (a).) If reports of hearing were submitted by the Department's prosecutors to its final decision maker or decision maker's advisers, as the Department concedes, this violated the APA.

The Department and Attorney General express concern that a rule precluding prosecutor-decision maker contact will have dramatic consequences for this and other agencies, requiring agencies to split and depriving agency heads of the advice of their subordinates. Nothing about our interpretation of the APA requires splitting this agency or any other. The Department may still function as a unitary agency. In doing so, however, it must afford licensees fundamentally fair hearings by observing a limited internal separation of functions. The agency head is free to speak with anyone in the agency and to solicit and receive advice from whomever he or she pleases—anyone except the personnel who served as adversaries in a specific case.[12] (§ 11430.30, subd. (a); see *California's New APA, supra*, 32 Tulsa L.J. at pp. 315–316.) Indeed, the agency head can even contact the prosecutor to discuss settlement or direct dismissal. (See § 11430.10, subd. (a); Cal. Law Revision Com. com., 32D West's Ann. Gov. Code, *supra*, foll. § 11430.10, p. 309; *California's New APA, supra*, 32 Tulsa L.J. at p. 316, fn. 118.) Virtually the only contact

would render the APA as it applies to the Department, and the Board's constitutional authority to ensure compliance, a dead letter. We reject such a seemingly absurd result.

[12] As Professor Asimow notes and the text of the APA plainly allows, the separation of functions can be accomplished on a case-by-case basis. (*Toward a New California APA, supra*, 39 UCLA L.Rev. at p. 1171, reprinted at 25 Cal. Law Revision Com. Rep., *supra*, at pp. 424–425.) Thus, an agency decision maker may receive private advice from members of his or her prosecutorial staff other than the particular prosecutor who handled a given matter.

that is forbidden is communication in the other direction: a prosecutor cannot communicate off the record with the agency decision maker or the decision maker's advisers about the substance of the case. But the one contact that is forbidden is the one contact that occurred here.[13]

## II. *Remedy*

We turn to the question of the appropriate remedy. Upon determining that the Department had violated the APA and due process, the Board reversed the Department's order in each case.

The Department implies no remedy is necessary because any submission was harmless; according to the Department, the decision maker could have inferred the contents of the reports of hearing (to wit, a summary of the hearing and requested penalty) from the record. We are not persuaded. First, because the Department has refused to make copies of the reports of hearing part of the record, despite a Board order that it do so, whether their contents are as innocuous as the Department portrays them to be is impossible to determine. Second, although both sides no doubt would have liked to submit a secret unrebutted review of the hearing to the ultimate decision maker or decision maker's advisers, only one side had that chance. The APA's administrative adjudication bill of rights was designed to eliminate such one-sided occurrences. We will not countenance them here. Thus, reversal of the Department's orders is required.

We note, however, that the further remedy ordered by the Court of Appeal—mandatory screening procedures barring prosecutor-decision maker contacts and precluding use of reports of hearing in future cases—is over-broad. The APA bars only advocate-decision maker ex parte contacts, not all contacts. Thus, for example, nothing in the APA precludes the ultimate decision maker from considering posthearing briefs submitted by, and served on, each side. The Department if it so chooses may continue to use the report of hearing procedure, so long as it provides licensees a copy of the report and the opportunity to respond. (Cf. § 11430.50 [contacts with presiding officer or decision maker must be public, and all parties must be afforded opportunity to respond].)

---

[13] Because limited internal separation of functions is required as a statutory matter, we need not consider whether it is also required by due process. As a prudential matter, we routinely decline to address constitutional questions when it is unnecessary to reach them. (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 328 [42 Cal.Rptr.3d 47, 132 P.3d 249]; *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225]; see *People v. McKay* (2002) 27 Cal.4th 601, 626–627 [117 Cal.Rptr.2d 236, 41 P.3d 59] (conc. opn. of Werdegar, J.).) Consequently, we express no opinion concerning how the requirements of due process might apply here.

## Disposition

For the foregoing reasons, we affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.