Filed 3/4/14   In re E.H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re E.H., a Person Coming Under the Juvenile Court Law. | D063318 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J229024) |
| v. | |
| E.H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

E.H. appeals an order adjudging him a ward of the court under Welfare and Institutions Code[1] section 602 and committing him to the San Diego County Camp Barrett program (Camp Barrett). He contends the order should be vacated because it is based on a previous invalid order, which deprived him of his due process rights under the United States Constitution as well as violated the separation of powers.

We decline to reach the constitutional questions raised by E.H. because they are unnecessary to resolve this case. The order committing E.H. to Camp Barrett occurred after a noticed hearing in which E.H. was permitted to present evidence and argument. Further, the alleged constitutional infirmities are unrelated to E.H.'s violations of the subject previous order. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 2, 2011, the San Diego County District Attorney filed a juvenile court petition, under section 602 alleging E.H. committed residential burglary (Pen. Code, § 459; count 1) and misdemeanor vandalism (Pen. Code, § 594, subd. (a)(b)(2)(A); count 2). On September 1, 2011, E.H. admitted count 1. The juvenile court dismissed count 2 with a *Harvey*[2] waiver. E.H. failed to appear for the dispositional hearing on September 23, 2011. The juvenile court issued a bench warrant for E.H.'s appearance.

On October 4, 2011, E.H. was detained on the bench warrant and appeared for a detention hearing. The juvenile court adjudged E.H. a ward of the court and removed

---

[1]    Statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]    *People v. Harvey* (1979) 25 Cal.3d 754.

him from his mother's custody under section 726, subdivision (a)(2). The court placed E.H.'s care, custody, and control under the supervision of the probation officer. The court ordered and stayed a commitment to the Breaking Cycles program (Breaking Cycles) not to exceed 150 days, pending a review hearing, and placed E.H. with his mother on the condition that he complete 30 days on home supervision as directed by the probation officer. The court also imposed several probation conditions.

Breaking Cycles is a comprehensive services program that began in 1998. Administered by the County of San Diego Probation Department (Probation Department), Breaking Cycles has three tracks, commitment to the program can be for 150, 240, or 365 days. Breaking Cycles can use the entire period ordered by the court as custody time, yet rarely does so. After a dispositional hearing, Breaking Cycles assesses the subject minor and develops an individualized case plan. The assessment team is comprised of probation officers, alcohol and drug services counselors, youth and family counselors, and the minor's family members. Participation of family members is critical to the program. The assessment process can last up to 21 days.

A case plan under Breaking Cycles could include sending a minor to home supervision, the Short Term Offender's Program (STOP), or a juvenile ranch facility.[3] A STOP commitment allows for a maximum of 90 days in custody, to be spent in juvenile

---

[3] A juvenile ranch facility is a behavioral and drug/alcohol rehabilitative facility serving male youths between the ages of 13 and 18. The facility is comprised of two camps: Ranch Del Campo and Rancho Del Rayo. (See <http://www.sdcounty.ca.gov/probation/jrf.html>.)

3

hall, but is generally limited to 21 days. Breaking Cycles also has the option of sending a minor home while he is within the program. If a minor fails to comply with the case plan, however, Breaking Cycles would reassess and evaluate the efficacy of the minor's individualized case plan or send the minor back to the juvenile court, depending on the nature of the misconduct or violation. For minor violations, Breaking Cycles would adjust the case plan to increase supervision or time in the Reflections Day Center program (Reflections )[4] as long as there is program time remaining. Such violations could include failure to partake in the program and follow the individualized case plan. For major violations, Breaking Cycles would bring the minor back to the juvenile court.

On October 27, 2011, the juvenile court issued an ex-parte order that required E.H. to complete Reflections. E.H. was continued a ward of the court.

On December 2, 2011, E.H. failed to appear for his review hearing. The juvenile court issued a bench warrant for E.H.'s appearance. On December 15, 2011, the juvenile court recalled the bench warrant, continued E.H. a ward of the court, and placed his care, custody and control under the supervision of the probation officer. The court placed E.H. with his mother and set an annual review hearing.

On January 24, 2012, E.H. was alleged to have violated several probation conditions, including E.H.'s failure to follow his mother's rules and instructions, refusal to attend school regularly, and testing positive for the drug "Spice." At a special hearing

---

[4] Reflections is a program "for adolescent offenders who are in need of a structured day-treatment program with intensive counseling, education, mental health, and family therapy as well as other intervention where needed." (See <http://www.sdcounty.ca.gov/ probation/juvenile_information_community_supervision.html>.)

4

on March 9, 2012, E.H. admitted the probation violations. The juvenile court continued E.H. a ward of the court, and placed his care, custody, and control under the supervision of the probation officer, and committed him to Breaking Cycles for a period not to exceed 240 days. The court imposed other probation conditions. E.H. was detained in juvenile hall pending commitment. Upon E.H.'s completion of the program, the court ordered E.H. to be placed in his mother's custody.

Following E.H.'s disposition hearing on March 9, 2012, Breaking Cycles performed its initial assessment of E.H. and placed him in Rancho Del Campo (Campo). E.H. completed Campo on May 14, 2012, and was then transitioned to Reflections North Day Center program (Reflections North) and the community unit while E.H. resided in his parent's home. On July 18, 2012, following E.H.'s failure to attend Reflections North, he was reassessed by Breaking Cycles and placed in STOP.

E.H. spent about 20 days in STOP, during which he was placed in juvenile hall. He then was released on home supervision. On the evening of August 8, 2012, home supervision officers attempted to visit E.H. at his home, but learned he left home without telling his mother where he was going.

On August 16, 2012, E.H. was picked up by probation officers at his home and transported to juvenile hall. On August 17, 2012, the Probation Department filed a detention report alleging E.H. violated a court order by leaving his placement without permission. In a probation violation report filed August 20, 2012, the Probation Department considered E.H.'s "advanced age, his continued delinquent behavior, his needs, and the limited impact Breaking Cycles appear[ed] to have made on his behavior,"

5

and recommended E.H. be committed to Camp Barrett for a period not to exceed 365 days. Camp Barrett was to provide "therapeutic intervention for substance abuse treatment, behavior modification, educational opportunities, independent living skills, and world readiness programs."

E.H. appeared for a detention hearing. His counsel objected to the previous order committing E.H. to Breaking Cycles and filed a motion, arguing that its administrative removal procedure was improper. The court heard E.H.'s motion wherein E.H. advanced the same arguments contained in his opening brief here, specifically that the administrative removal procedure violated section 777 as well as the United States Constitution (due process and separation of powers). The prosecutor called the director of Breaking Cycles to testify about the program. After considering the evidence and the argument of counsel, the juvenile court denied E.H.'s motion objecting to Breaking Cycles. The court explained, "[o]nce the order was made to Breaking Cycles, all aspects of the disposition order were set, and they were set in stone." Thus, the court stated the order "cannot be modified by probation or one party[,]" and any change to the order "can only be made by the Court." The court further explained that "everything that happens during that Breaking Cycles program is monitored and supervised by probation" within the parameters of Breaking Cycles. In contrast, when a minor requires "higher sanctions" or when he commits violations that necessitate removal of the minor from the community for a prolonged period of time, section 777 probation violation hearings are required. Otherwise, the court explained it did not see why placing a minor in his home limits probation from making temporary, "minute adjustments in the individual programming."

6

Thus, the court concluded Breaking Cycles does not violate a minor's due process rights when it makes "minute adjustments in programming." The court also rejected E.H.'s separation of powers argument.

The juvenile court subsequently held an evidentiary hearing regarding the Probation Department's recommended commitment of E.H. to Camp Barrett. E.H. appeared at the hearing with his attorney, but presented no evidence to dispute the alleged probation violations. After hearing argument, the juvenile court committed E.H. to Camp Barrett. The court further ordered E.H. be placed in his mother's custody after he completed his time at Camp Barrett.

E.H. timely appealed.

## DISCUSSION

E.H. challenges the November 20, 2012 minute order committing him to Camp Barrett. He argues that minute order should be vacated because it flowed from an alleged violation of the home supervision portion of a Breaking Cycles commitment order, and that dispositional order was invalid in the first instance. Specifically, he contends the order committing him to Breaking Cycles allowed the Probation Department to summarily determine any program noncompliance as well as unilaterally determine E.H.'s placement and commitment level, allowing the Probation Department to remove E.H. from his home, without a noticed hearing, after he was placed there as part of Breaking Cycles. E.H. maintains these aspects of Breaking Cycles violate section 777 as well as his due process rights and the separation of powers under the United States Constitution.

7

Section 777 states in part:

> "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after a noticed hearing."

If a section 777 notice is not filed within 48 hours (excluding noncourt days) after the minor was taken into custody, the minor must be released. (*In re Greg F.* (2012) 55 Cal.4th 393, 403; § 631, subd. (a).)

Here, E.H. argues that his removal from home supervision into STOP during his Breaking Cycles commitment violated section 777. However, by its express terms, section 777 is only triggered by an order or modification of an order without a noticed hearing. In the instant action, there was neither an order modifying the previous Breaking Cycles order nor an order committing E.H. to STOP. Thus, section 777 was not implicated when E.H. was placed in STOP.

Further, even if section 777 does not require a new order or a modification of an existing order, E.H.'s challenge would still be without merit. Here, E.H. already was released from STOP; therefore, any challenge under section 777 is moot as well.

E.H. also brings two constitutional challenges to a portion of the Breaking Cycles order. First, he claims that his due process rights were violated when he was removed from his home and placed in STOP, which subjected him to about a 20-day stay in juvenile hall. E.H. contends that he was not given the opportunity to challenge the alleged violations leading to his STOP commitment. In other words, he was not

8

permitted to present evidence to contradict the alleged parole violations in a noticed hearing. Second, E.H. maintains the portion of the Breaking Cycles order that allows the Probation Department to determine the existence of a parole violation and reassess his placement under Breaking Cycles, which could include a new service and/or more restrictive confinement, violates the separation of powers in the United States Constitution. Because of these alleged constitutional infirmities in the order committing E.H. to Breaking Cycles, he asserts the order committing him to Camp Barrett, based on a violation of the Breaking Cycles order, is invalid.

In considering constitutional questions, we tread lightly. "As a prudential matter, we routinely decline to address constitutional questions when it is unnecessary to reach them." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 17, fn. 13.) "Generally, courts should not pass on constitutional questions when a judgment can be upheld on alternative, nonconstitutional grounds. Courts should follow a policy of judicial self-restraint and avoid unnecessary determination of constitutional issues." (*California Teachers Assn. v. Board of Trustees* (1977) 70 Cal.App.3d 431, 442; see also *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230; *Sanchez v. City of Modesto* (2006) 145 Cal.App.4th 660, 671; *People v. Pantoja* (2004) 122 Cal.App.4th 1, 10.)

Here, E.H.'s constitutional challenges to the Breaking Cycles order have little connection to the violations that led to his Camp Barrett commitment. In its report recommending a Camp Barrett commitment, the Probation Department listed two violations:

9

"Violation #1: On 7/18/12, [E.] was reassessed by the Breaking Cycles program to participate in STOP and Reflections North followed by the Community Unit with two weeks of Home Supervision following his failure to attend the Reflections North Day Center Program.

"On 8/7/12, [E.] was released on Home Supervision upon completion of his STOP commitment. However, on 8/8/12, at about 6:10 p.m., Home Supervision officers attempted to contact [E.]l at his residence with negative results. The minor's mother reported he had left about three hours earlier and his whereabouts were unknown. As a result, [E.] was placed on the Juvenile Hall Hot Sheet. On 8/16/12, at about 9:15 a.m., Oceanside police arrested the minor and his brother at their home following information from the mother that the minor and his brother, [Evan H.], were present."

The first violation describes the parole violation (failure to attend Reflections) that led to E.H.'s reassessment under Breaking Cycles and his commitment to STOP. The second concerns E.H. leaving home without permission and without telling his mother his destination. Both of these violations occurred while E.H. was home and not in a more restrictive confinement. Put differently, neither violation involves the due process challenge E.H. now raises.

Moreover, E.H. was given the opportunity at an evidentiary hearing to provide evidence to contradict the allegations of the violations. Therefore, he was provided with sufficient due process to challenge the allegations that led to the Camp Barrett order. He chose not to do so and presented no evidence in his favor. In addition, one of the violations simply repeated the infringement that led to E.H.'s STOP placement. E.H. complains he was not given an opportunity to present evidence to refute this alleged violation prior to being reassessed and placed in STOP. Ironically, when he was given a chance to refute the allegation, he did not do so. Although we appreciate that at that time

10

it was too late to prevent his commitment to STOP, we find it curious that when given an opportunity to present evidence to contradict the allegation, E.H. declined after complaining he had no such opportunity in the first instance.

Also, E.H.'s separation of powers argument is not linked to the order committing him to Camp Barrett. A noticed hearing was held where the parties were able to present evidence and argument regarding E.H.'s commitment. It was not the Probation Department determining the existence of a violation and placing E.H. in a more restrictive confinement. Instead, the court held a hearing, considered argument from the parties, and allowed the parties to present evidence before making its order.

In summary, E.H. is not directly attacking the order committing him to Camp Barrett. Instead, he is using that order as a conduit to bring a constitutional challenge to the previous order committing him to Breaking Cycles. Based on the record before us, we decline to address that constitutional issue because we find it unnecessary to resolve the issue before us. (See *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.*, *supra*, 40 Cal.4th at p. 17, fn. 13.) Twice, the juvenile court ordered E.H. to be committed to Breaking Cycles. At neither hearing giving rise to those orders did E.H. raise any constitutional challenge. Instead, he waited until the Probation Department sought a new order with a more restrictive confinement before he objected. E.H. was presented with an opportunity to dispute the allegations giving rise to the Probation Department's recommendation that he be committed to Camp Barrett. The court, not the Probation Department, ultimately determined Camp Barrett was the proper commitment for E.H. The constitutional ailments of which E.H. complains played no

11

role in the juvenile court's determination.  It may be that parts of Breaking Cycles raise constitutional issues that need to be addressed.  However, this case is not the vehicle for us to do so, not on the record before us.

DISPOSITION

The order is affirmed.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.

McDONALD, J.