[No. B194696. Second Dist., Div. One. Sept. 12, 2007.]

JOHN PERRY HODGMAN, an Incompetent Person, etc., Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD, COMMUNITY CARE CENTER, INC., et al., Respondents.

COUNSEL

Ernest A. Canning for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Gray & Prouty and Bill K. Gray for Respondents Community Care Center, Inc., and St. Paul Travelers Insurance Company.

OPINION

**MALLANO, Acting P. J.**—A guardian ad litem and conservator of an incompetent injured worker seeks to compel the Workers' Compensation Appeals Board (WCAB or Board) to vacate its opinion determining the

guardian was entitled to be compensated by the worker's employer for the care she gave the worker pursuant to Labor Code section 4600[1] only if she were not compensated for such care out of the conservatorship estate and the care were not duplicative or capable of being duplicated by a professional such as a licensed vocational nurse.

We conclude the Board has no basis for restricting compensation to nonduplicative care because the parties agreed in a compromise and release agreement (C&R) that the guardian was entitled to compensation for duplicative care and the employer, not the estate of the injured worker, should bear the expense.

## BACKGROUND

On October 28, 1988, John Perry Hodgman (John) sustained a catastrophic industrial injury in a motorcycle-versus-automobile collision while employed by Community Care Center.[2] Hospitalized and in a coma for an extended period, he underwent multiple surgeries, including implantation of permanent ventricular peritoneal shunts within the brain in order to reduce pressure from an intracranial bleed which was blocking the flow of cerebral spinal fluid. The injuries left John with severe cognitive and physical deficits, and he now resides in an assisted living facility.

On November 22, 1988, John's mother, Ruth Ann Prokosch (Prokosch), was appointed John's guardian ad litem and trustee by the workers' compensation judge (WCJ). Prokosch and her husband, Merlin, were later appointed conservators of John's person and estate by the superior court. (*Conservatorship of Hodgman* (Super. Ct. L.A. County, 1989, No. NEP35711).)

In early 1989, Dr. Withers at Arcadia Methodist Hospital advised Prokosch that she needed to become aware of the nature of John's injury in that she would be the primary person involved in making decisions concerning his medical care. Prokosch, who had no prior medical knowledge or training, undertook extensive self-study, which included reading a book on closed brain injuries written by a renowned physician in the field, whom she

---

[1] Labor Code section 4600, subdivision (a) provides that an injured worker is entitled to all care "reasonably required to cure or relieve the injured worker from the effects of [the] injury . . . ."

[2] Community Care Center was insured by St. Paul Travelers Insurance Company. We refer to both collectively as Community Care Center.

contacted. The book dealt with stages of postinjury development. She also participated in family support groups. She continued to do research as issues arose and acquired and conducted an in-depth study of all of John's medical reports.

Dr. Rosen at Northridge Hospital advised Prokosch that an individual whose family members are actively involved in patient care improves far more rapidly than those who are left alone. In a March 13, 1998 report, Jeffrey Schaeffer, Ph.D., opined: " '[John's] family and in particular his mother Ruth Prokosch [have] been a major source of strength and advocacy for [John], the results of which appear to have been the procurement of [a] vast number and depth of services during the past ten years or so. [A]bsent this exceedingly high level of commitment and advocacy . . . it would be unlikely that he would have accessed as many services that he received to date, nor would he have progressed as far as he has, given the severity and complexity of his initial brain injury and subsequent neuro-medical developments.' "

Prokosch's services included attending all medical appointments and medical team conferences, informing and interacting with all medical providers regarding medical and behavioral issues as they arose, evaluating and checking on the level of attendant care and medications, inspecting equipment and arranging for necessary repairs, maintaining and delivering supplies, and, because her son risks aspiration of food, reviewing and adjusting his menus. Dr. Rosen and two other physicians, Dr. Dumas and Dr. Hedge, all recommended that she engage in these activities.

Oonagh Sankar, a registered nurse who has acted as the carrier-authorized nurse case manager for John since about 1998 or 1999, testified she handles approximately 25 catastrophic cases at any one time and attends only a small percentage of the medical appointments. As a case manager for 21 years, Sankar is of the opinion that Prokosch's direct involvement is essential: Intervention by a guardian, parent, or other family member to secure quality care is necessary for the survival of someone in John's condition; during medical evaluations issues arise suddenly, which physicians specifically directed Prokosch to watch for and address; and because a brain-injured individual is incapable of communicating such things as the need for repair of medical equipment, a guardian is needed so that such information is communicated to the medical team. She also testified that only Prokosch has the authority to make John's informed-consent decisions. Sankar stated that John

sometimes aspirates his food and that significant medical issues like pneumonia could arise unless "caught right up front, which is what [Prokosch] is so good at, [but] someone who wasn't . . . so diligent . . . could easily miss . . . ."

Nurse Sankar sees Prokosch's monitoring of attendant care as vital. "There are attendants in and out of that room, on and off John's case all the time . . . . [T]here is no one else to take responsibility to make sure the day-to-day operations are running well and what's going on with the equipment. People want to come in, do their shift, do their hours and leave, they don't care [that] the wheelchair [is wobbly]."

Dr. Dumas, John's primary treating physician, testified that John's "caregivers are . . . his custodians or guardians . . . and he has a nurse case manager . . . ." Dr. Dumas defers "immediate care decisions that are urgent or emergent to them . . . ." Dr. Dumas noted that John is not capable of making his own day-to-day decisions or of deciding what care he needs. All of these decisions can impact John's medical status and must be made for him by his guardian, who has the power to make informed-consent decisions.

Prokosch has taken care to log separately the time she spends on medically related activities for which she has sought compensation from Community Care Center in the workers' compensation proceedings and nonmedically related activities for which she has obtained compensation from the conservatorship in superior court.

A dispute arose in 1991 regarding the question of whether Prokosch, in her capacity as guardian, was entitled to be compensated for "medical treatment," such as nursing or housekeeping services and for the extraordinary amount of time she devotes to ensuring that her son receives appropriate medical care.[3]

After a long delay unexplained by the parties, on February 9, 2000, Prokosch and Community Care Center executed a C&R regarding Prokosch's claimed expenses through December 31, 1999. The C&R covered six months after December 31, 1999 (or through July 9, 2000), and stated: "For the next six (6) months, it is agreed that the Guardian Ad Litem [Prokosch] will be entitled to $25.00 per hour for reasonable and necessary services, which shall not be <u>duplicative</u>* to other services. At the termination of the six (6) month period, the parties will re-negotiate the hourly amount. Six month period

---

[3] The court takes judicial notice of the petition, amended petition, response and order regarding "payment of Guardian ad Litem fee" provided as exhibits to the petition for writ of review that for unknown reasons were not part of the record of proceedings.

beginning upon submission of this document to WCAB. . . . [¶] *Duplicate services *shall not be interpreted as any two parties such as the legal guardians and the case manager attending to the same issue,* as it is often necessary for both parties to attend appointments jointly; to discuss medical & equipment issues, etc." (Italics added.)

Pursuant to the order approving the C&R, Prokosch submitted monthly statements to Community Care Center, which compensated her without objection for five years, from 2000 to 2005. In 2005, Community Care Center abruptly quit paying.

On November 15, 2005, Prokosch filed a petition to enforce the C&R, for a penalty, and for reasonable attorney fees. Prokosch contended that the C&R established that she is entitled to be compensated by Community Care Center for her services where necessary to secure appropriate medical care and equipment for John and Community Care Center should pay a penalty for unreasonably refusing to do so. "As all such activity requires necessary time expenditures on the part of the Guardian ad Litem [Prokosch] in order to procure treatment that is necessary to cure or relieve the injury, under the [C&R] the defendant [Community Care Center] is obligated to reimburse such 'services.' "

Community Care Center responded that the C&R was limited to six months, with the hourly amount to be renegotiated, but there was no agreement that Community Care Center was required to pay for any guardian ad litem time or expense.[4] It further contended there was no case law or statutory law requiring such payments.

At trial, Prokosch argued the C&R was res judicata. The WCJ ruled that the C&R was res judicata, but only as to services from 1988 to December 31, 1999. The WCJ further ruled that there were no additional services for which Prokosch could be compensated under the C&R and that Prokosch should look to the superior court conservatorship. The WCJ relied on the superior court's "Order Settling Sixth Award and Report of Conservation and Allowing Compensation to Conservators and Attorney," which indicated that the conservatorship estate totaled $564,557.97, of which $551,144.45 was cash that was augmented monthly by workers' compensation and Social Security

---

[4] The court takes judicial notice of Community Care Center's answer to the petition to enforce the C&R included with exhibits to the petition for writ of review but omitted from the record of proceedings.

benefits. The WCJ noted that Prokosch had submitted periodic accountings to the superior court and that $12,420 was allowed to Merlin and Ruth Ann Prokosch for the period August 1, 2003, to July 31, 2005, and $42,842.95 for the period November 9, 1989, to July 31, 2001. And the WCJ also relied on Nurse Sankar's testimony that, as the case manager, she coordinated John's medical care, obtained authorization, home care, transportation, pharmaceuticals, durable medical equipment and the like, and she determined the best plan to meet John's medical needs.

The WCJ explained that Labor Code section 5307.5 permits guardian ad litem fees to be compensated upon filing an account either with the Board or with the superior court, but not both.[5] The WCJ determined that Prokosch was entitled to only one compensation as allowed by the superior court. The WCJ reasoned: "[A]s the Superior Court has given Ms. Prokosch full authority to manage all medical care, to provide for all personal needs, and to manage all financial resources for [John], this WCJ concludes that the services for which Ms. Prokosch is seeking reimbursement fall totally within the parameters of her conservatorship duties."

Prokosch filed a petition for reconsideration. The WCJ commented in the report and recommendation on reconsideration: "Ms. Prokosch has submitted requests for reimbursement for services she rendered in August 2005 which total $986.25 . . . and in September 2005 for $941.00 . . . . Itemized in these requests are claims for doing her son's banking, spending 4.3 hours per month reviewing menus, meeting with her son's attorney and spending 2.5 hours preparing a report so she could submit it to the insurance company for reimbursement." The WCJ reasoned: "Ms. Prokosch has requested compensation for services she has provided in relation to securing medical care for her son. The issue is whether or not the services are of a type which would qualify for reimbursement under the guise of 'attendant' or 'nursing' services allowable under Labor Code Section 4600. [¶] Ms. Prokosch is actually not

---

[5] Labor Code section 5307.5 provides: "The appeals board or a workers' compensation judge may: [¶] (a) Appoint a trustee or guardian ad litem to appear for and represent any minor or incompetent upon the terms and conditions which it deems proper. The guardian or trustee shall, if required by the appeals board, give a bond in the form and of the character required by law from a guardian appointed by a superior court and in the amount which the appeals board determines. The bond shall be approved by the appeals board, and the guardian or trustee shall not be discharged from liability until he or she files an account with the appeals board or with the superior court and the account is approved. The trustee or guardian shall receive the compensation for his or her services fixed and allowed by the appeals board or by the superior court. [¶] (b) Provide for the joinder in the same proceeding of all persons interested therein, whether as employer, insurer, employee, dependent, creditor, or otherwise."

requesting reimbursement for providing either 'attendant' or 'nursing' care for her son. [John] lives in an assisted living facility, has full time nursing assistants to help him on a 24 hour basis, has a transportation co. to take him to medical appointments, has a nurse case manager to coordinate those appointments and has a primary treating physician, Dr. Armen Dumas, to manage his care, in addition to physicians and therapists in multiple specialties, all of which are being provided for by the carrier."

The WCJ also weighed Dr. Dumas's opinion, stating: "Dr. Dumas said in his deposition taken on September 22, 2005 . . . , that it is his decision as to what doctor [John] goes to and what treatment he gets; that it's his obligation as primary treating physician to monitor all of [John's] treatment. He stated that there was no other medical treatment that [John] required other than what he, other specialists, or the nurse case manager was to give. [¶] He did say that as [John] does not have the capacity to make decisions, somebody has to make the decisions for him."

The WCJ observed: "As stated above, Ms. Sank[ar], the Nurse Case Manager in this case coordinates [John's] medical care, obtains authorizations, if there are issues with home care, transportation, pharmacy, obtaining durable medical equipment, etc."

The WCJ came to a decision which differed from her original opinion, stating: "Ms. Prokosch has asked for compensation for attending to things to which [John] cannot himself do, including attending medical appointments so that she can make decisions for him. [¶] This WCJ's opinion on decision included a discussion of guardian ad litem vs. conservator. Ms. Prokosch is both. As Conservator of the [P]erson and the Estate of John Hodgman she has been vested by the Superior Court with full authority to make all health care decisions on behalf of her son, to provide for all his personal needs for physical health, food, clothing and shelter, and to manage all his financial resources. This WCJ concluded that all services for which Ms. Prokosch is seeking reimbursement fall totally within the parameters of her conservatorship duties." "However, on further reflection, it would appear that although Ms. Prokosch could very well be compensated for all the services she provides for her son relating to his personal needs, his financial needs, or his medical decision needs through the Superior Court, this would not preclude her from being reimbursed by the carrier for those medical services which would be allowable to her under Labor Code Section 4600, as long as she did not simultaneously claim reimbursement for them in her role as conservator."

The WCJ also commented: "It cannot be concluded from a reading of the Compromise and Release Agreement that [Prokosch and Community Care Center] contemplated that any of these activities were to be reimbursed." The WCJ recommended to the Board that, because the C&R was ambiguous as to what continuing services were anticipated, the WCJ's original finding be amended to read: "Ruth Ann Prokosch, as Guardian Ad Litem for John Perry Hodgman, is entitled to be reimbursed for services rendered pursuant to Labor Code section 4600 and for which she does not receive compensation relative to her role as a Conservator, and for which services are not duplicative or capable of being duplicated by other professionals such as the LVN, to be paid by defendants [Community Care Center and its carrier] in amounts to be determined by the parties or by further development of the record and supplemental proceedings."

The Board granted the petition for reconsideration, affirmed the WCJ's decision, and amended the finding as recommended by the WCJ.

## DISCUSSION

*Standard of Review*

Because the pertinent facts are not in dispute, the issues before us are questions of law and the standard of review is de novo. (*Reinert v. Industrial Acc. Com.* (1956) 46 Cal.2d 349, 358 [294 P.2d 713].)

*Reasonable Care*

Prokosch contends the Board unreasonably impaired her right of compensation for attending to the medically necessary needs of John because decisional law interpreting Labor Code section 4600 encompasses care provided by a lay person which might have been done by a professional, including a licensed vocational nurse. We agree.

An injured worker is entitled to all care reasonably required to cure or relieve the worker from the effects of the injury. (Lab. Code, § 4600, subd. (a).) Such care includes "[m]edical, surgical, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, [and] is not limited to services and supplies by physical therapists, chiropractic practitioners, and acupuncturists, as licensed by California state law and within the scope of their practice as defined by law." (Lab. Code,

§ 3209.5; see *Henson v. Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 452, 457–462 [103 Cal.Rptr. 785]; *Republic Indemnity Co. of America v. Workers' Comp. Appeals Bd.* (1980) 45 Cal.Comp.Cases 318, 319; *American Bridge Division, U.S. Steel Corp. v. Industrial Accident Com.* (1965) 30 Cal.Comp.Cases 159, 160–161.)

■ The care Prokosch provides—monitoring and managing all of her son's health care needs—qualifies as medical care under Labor Code section 4600. When Prokosch makes decisions regarding John's medical needs, she is performing a service similar to that of the nurse case manager, or the registered nurse on duty, or the physician on duty, or the licensed vocational nurse. Prokosch's purpose as John's guardian is to decide what treatment is appropriate—regardless of whether any of these named professionals originally thought of the treatment or realized the need. Concomitant to receiving medical treatment is the ability to decide what treatment to accept or refuse, that is, to weigh one's options. Even though professionals make these recommendations based on their expertise, their purpose is simply to advise the patient, who must make the choice. Prokosch provides this critical service for John.

*Conservator as Caregiver*

■ While the conservatorship authorizes Prokosch to make health care decisions, it does not require her to perform health care activities such as deciding what John should eat or double-checking a nurse's actions. The WCJ reasoned that because Prokosch was appointed conservator in the superior court, the Board had no jurisdiction to award compensation for conservatorship duties. In that belief, the WCJ was correct, as far as it goes. "A WCAB-appointed guardian ad litem or trustee, or a court-appointed guardian or conservator of the employee or dependent's estate, may apply for [workers' compensation] benefits . . . and otherwise claim and exercise any right or privilege of the ward as if no disability existed. [Citations.] [¶] The guardian represents the . . . incompetent in the prosecution of the case. The trustee's appointment is usually made as part of the findings and award, to facilitate administration of money benefits and other payments due the . . . incompetent. The guardian is ordinarily named trustee." (Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2004) § 13.107, p. 917.) "The WCAB may ask the appointee to give a bond of the kind required by the superior court for the guardians it appoints. The WCAB determines the amount of the bond and approves its form. To be discharged from liability, the guardian or trustee

must file an accounting with the WCAB or superior court. Fees of the guardian or trustee are fixed by either the WCAB or the superior court. Lab C § 5307.5(a)." (Cal. Workers' Compensation Practice, *supra*, § 13.109, p. 918.)

But the care for which Prokosch requested compensation from Community Care Center does not fall under the duties of a conservator. Prokosch took caution to keep separate the duties related to medical care from those related to the conservatorship. The duties for which she requested compensation here are equivalent to medical treatment and should be paid by the employer for the industrial injury John suffered, not paid out of John's funds in the conservatorship estate. When Prokosch performs acts that may be considered medical care, the Board has jurisdiction to determine whether compensation is due to Prokosch, not as a conservator, but as a caregiver. And the Board should leave it to the superior court to ensure that Prokosch is not compensated for the same care in the conservatorship.

*The C&R*

The WCJ incorrectly interpreted the C&R. The C&R made clear that Prokosch's caregiving services were compensable even if duplicative of professional services such as those performed by the case manager. By its plain language, the C&R was renegotiable only with regard to the rate of pay, and the WCJ, in effect, rewrote the C&R to exclude duplicative services.

*The Penalty*

Prokosch contends she is entitled to a penalty assessment under Labor Code section 5814 and attorney fees pursuant to Labor Code section 5814.5 for efforts to obtain the penalty. We agree.

When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to an award, the full amount of the award for the species of benefit delayed shall be increased by 10 percent. (Lab. Code, § 5814; *Gallamore v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815 [153 Cal.Rptr. 590, 591 P.2d 1242].) The only justification for the delay is reasonable doubt as to liability from a medical or legal standpoint. (*Kerley v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223 [93 Cal.Rptr. 192, 481 P.2d 200].) The Board denied a penalty because it found the C&R ambiguous. But we have determined that the C&R is not ambiguous. And there was no reasonable doubt as to liability from a legal standpoint to justify delay in compensating Prokosch. Therefore, a penalty assessment and attorney fees are appropriate.

## DISPOSITION

The decision of the Workers' Compensation Appeals Board is annulled and the matter is remanded for further proceedings consistent with this opinion.

Vogel, J., and Jackson, J.,[*] concurred.

A petition for a rehearing was denied October 1, 2007, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied December 12, 2007, S157443. Chin, J., did not participate therein.

---

[*]Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.