[No. B221431. Second Dist., Div. Three. Jan. 26, 2011.]

STATE FARM INSURANCE COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and CARL JAMES
PEARSON, Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part IV.B.1.

COUNSEL

Albert and Mackenzie and Amy Creager for Petitioner.

Andrea Sheridan Ordin, County Counsel, Leah D. Davis, Assistant County Counsel, and Derrick M. Au, Principal Deputy County Counsel, as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Law Offices of William S. Lindheim, William S. Lindheim; Law Offices of Steven Klugman and Steven Klugman for Respondent Carl James Pearson.

OPINION

KITCHING, J.—

## I. INTRODUCTION

State Farm Insurance Company (State Farm) petitions for writ of review pursuant to Labor Code section 5950[1] of the Workers' Compensation Appeals Board's opinion and order denying reconsideration of a joint supplemental findings and award. In that award, the Workers' Compensation Appeals Board (WCAB) found that lien claimant Carl Pearson, husband of applicant Francisca Apparicio, provided Apparicio with attendant care services 24 hours every day from July 24, 2003, and that Pearson was entitled to compensation for those services at $30 per hour. The total reimbursement to Pearson was $1,520,640. We conclude that Apparicio and Pearson's ex parte communications to a medical examiner violated the prohibition against ex parte communications in workers' compensation regulations. That violation requires disqualification of the medical examiner and the striking of the medical examiner's reports and testimony. We also conclude that the award of compensation to Pearson for caregiver services was unreasonable, was not authorized by section 4600, subdivision (a), and was not supported by substantial evidence. We annul the opinion and order denying reconsideration and order the matter remanded with directions to disqualify the medical examiner, to strike reports and opinions of the medical examiner, to select a new medical examiner, and to conduct proceedings to redetermine and recalculate compensation to be awarded lien claimant Pearson.

---

[1] Unless otherwise specified, statutes in this opinion will refer to the Labor Code.

## II. FACTUAL AND PROCEDURAL HISTORY

Francisca Apparicio, employed as a legal assistant by State Farm, sustained injury to her psyche, lumbar spine, and right upper extremity, and developed fibromyalgia. Apparicio made a claim for an injury to her back and bilateral extremities occurring on August 20, 1999. Apparicio made a second claim for a continuous trauma injury from 1993 to January 4, 1995, for her right arm, shoulder, back, fibromyalgia, and for a psychiatric sequela. On August 17, 2006, a stipulated award was entered for industrial injury to psyche, lumbar spine, right upper extremity and fibromyalgia, causing 100 percent permanent disability and a need for future medical treatment. Jurisdiction was reserved over Pearson's lien claim for his attendant care of and transportation services for Apparicio.

On December 6, 2006, the workers' compensation administrative law judge (WCJ) disallowed the lien claim on the ground that Pearson failed to provide substantial medical evidence of the kind and amount of services Apparicio reasonably required. Pearson's petition for reconsideration was granted, however, and on October 12, 2007, the WCAB ordered the WCJ to develop the record regarding the services and the level of attendant care required by Apparicio.

Following the WCAB's decision, the parties could not agree on a medical expert to address issues identified by the WCAB. On December 19, 2007, the WCJ ordered the parties to have Dr. Donna Barras, M.D., conduct an evaluation and provide an expert opinion on Apparicio's past and present life care needs, including the nature of home care services and the hours per day they were required.

Without giving notice to State Farm, counsel for Apparicio and Pearson contacted Dr. Barras and provided her with several medical reports. Dr. Barras reviewed those reports and other information, conducted a three-hour evaluation of Apparicio, and prepared an April 18, 2008, report describing Apparicio's condition and her medical, medication, nursing, equipment, and housing needs and their expected costs. Dr. Barras's report valued licensed vocational nursing (LVN) services provided by Pearson at $35 per hour. State Farm deposed Dr. Barras on August 7, 2008.

State Farm moved to strike Dr. Barras's report based on its allegations that Apparicio's counsel set up the evaluation without notice to State Farm, provided Dr. Barras only with unilaterally selected records, and did not explain to her the nature of the services which the WCJ appointed her to provide.

On January 27, 2009, trial occurred on the need for attendant care and transportation services, liability for self-procured medical expenses (including

caregiver services and transportation services), Pearson's lien claim for caregiver and transportation services rendered to Apparicio, the nature of life care Apparicio required, and State Farm's motion to strike Dr. Barras's report.

The WCJ addressed State Farm's motion to strike in a February 17, 2009, order which vacated the submission and directed further augmentation of the record. The WCJ found that Dr. Barras was not made aware of the purposes for which she was appointed, which included a retroactive analysis of the extent to which lien claimant Pearson's services were reasonable and necessary, and found that Pearson unilaterally submitted documents to Dr. Barras for consideration. The WCJ also found an ambiguity in Dr. Barras's report that required clarification. The WCJ did not find that these issues tainted Dr. Barras's opinion or required it to be stricken, and instead determined that a supplemental opinion from Dr. Barras could rectify these problems. The WCJ therefore vacated the January 27, 2009, order submitting the matter for decision, ordered the parties to jointly submit to Dr. Barras all documents previously submitted into evidence at all hearings and all other medical reports and records in their possession, and ordered that Dr. Barras receive all prior findings and awards, minutes of hearings, and summaries of evidence. The WCJ ordered Dr. Barras to prepare a supplemental report addressing the nature of services reasonably required, determining whether they were more appropriately certified nurse's assistant services or LVN services, and estimating the reasonable number of hours per day Pearson would have been required to provide services in the past.

Dr. Barras served a supplemental report dated May 29, 2009, and the matter was resubmitted for decision. On August 26, 2009, the WCJ's joint supplemental findings and award, and opinion on supplemental decision, found (1) because of her injuries, Apparicio required a life care plan as described by Dr. Barras's April 18, 2008, plan; (2) lien claimant Pearson had provided attendant care services to Apparicio 24 hours per day from July 24, 2003; (3) the value of Pearson's services, in the capacity of an LVN, was $30 per hour, for which Pearson was entitled to reimbursement at $720 per day from July 24, 2003, until implementation of the life care plan by professionals at the employer's expense.

State Farm petitioned for reconsideration and moved to vacate the findings and award. State Farm argued, inter alia, that Dr. Barras's reports and opinion should be stricken because ex parte communication with Apparicio and Pearson tainted her reports, that Dr. Barras's reports did not constitute substantial medical evidence because she failed to review complete medical records, and that in her deposition testimony Dr. Barras admitted she lacked knowledge of California workers' compensation procedures.

State Farm also argued that the WCJ's finding regarding reimbursement of Pearson for caregiver services was excessive and unreasonable. Specifically, State Farm argued that Pearson's claim for caregiver services was not reasonably necessary to relieve or cure the effects of Apparicio's injury; that Pearson unreasonably asserted entitlement to reimbursement for services provided 24 hours per day, seven days per week; and that $30 per hour for caregiver services was excessive and unreasonable, because Pearson provided only 2.75 hours of medical services each day and the balance of services involved cooking, cleaning, paying bills, and nonmedical errands, which were not reimbursable as medical care at $30 per hour. State Farm also argued that Pearson failed to meet his burden of proof under sections 5705 and 3202.5.[2]

On November 23, 2009, the WCAB filed its opinion and order denying reconsideration of the WCJ's August 26, 2009, joint supplemental findings and award. The WCAB found that by education, licensure, and experience Dr. Barras was qualified to provide expert opinion regarding the level of attendant care Apparicio required and the value of services Pearson provided, and found that Dr. Barras's reporting was substantial evidence. The WCAB found that the WCJ's decision regarding the hourly rate Pearson was to be paid for services he provided was reasonably based on credible evidence.

The WCAB rejected State Farm's contention that the "taint" of Dr. Barras's reporting because of Pearson and Apparicio's unilateral contacts required that Dr. Barras's reporting be disregarded. The WCAB found that State Farm had a full opportunity to provide Dr. Barras with all relevant information, and deposed Dr. Barras about her qualifications, the information she considered in preparing her April 18, 2008, report, and its content and method of preparation. The WCAB found no substantive evidence that initial contact by Apparicio caused Dr. Barras's reporting to be biased or insubstantial or required that it be disregarded.

The WCAB addressed State Farm's contention that Dr. Barras was not qualified to provide expert opinion on the level of attendant care Apparicio required and the services Pearson provided. The WCAB quoted Dr. Barras's deposition testimony, found that her extensive work experience acquainted her with the needs of persons with disabilities, and determined that her education, licensure as a medical doctor, and personal and professional experiences qualified her to serve as an expert witness.

---

[2] Section 5705 states, in relevant part: "The burden of proof rests upon the party or lien claimant holding the affirmative of the issue." Section 3202.5 states: "All parties and lien claimants shall meet the evidentiary burden of proof on all issues by a preponderance of the evidence in order that all parties are considered equal before the law. 'Preponderance of the evidence' means that evidence that, when weighed with that opposed to it, has more convincing force and the greater probability of truth. When weighing the evidence, the test is not the relative number of witnesses, but the relative convincing force of the evidence."

The WCAB found that the record did not support the assertion that Dr. Barras did not review a complete medical history, and concluded that Dr. Barras was fully informed of Apparicio's diagnosis when she prepared her reports.

With regard to State Farm's contention that the extent and level of care found by the WCJ was excessive, the WCAB concluded that the WCJ's determination was based on Dr. Barras's credible and substantive reporting, whose accuracy State Farm did not dispute. Based on Dr. Barras's testimony, the WCAB concluded that Apparicio's condition and medications required that she be monitored and assisted 24 hours per day, seven days per week, and found that the evidence supported the WCJ's conclusion that the hourly compensation due lien claimant Pearson was near the $35 hourly rate that State Farm would otherwise have had to pay an LVN to provide 24-hour care. The WCAB stated that services provided by the applicant's spouse did not relieve a defendant from the obligation to pay for those services, and the care Pearson provided by monitoring and managing Apparicio's health care needs qualified as medical care under section 4600. Therefore the WCAB concluded that Pearson was entitled to be reasonably compensated at the rate such services would command if provided by another. Based on Dr. Barras's testimony that an LVN would be compensated at $35 an hour, and because State Farm offered no evidence to challenge that $35 hourly rate, the WCJ's adjustment of the rate to $30 per hour was in State Farm's favor and was within the range of the only credible evidence in the record concerning the rate for LVN services provided by Pearson. The WCAB therefore affirmed the WCJ's decision that the appropriate rate to compensate Pearson's services was $30 per hour, and denied State Farm's petition for reconsideration.

State Farm petitions in this court for a writ of review, seeking reversal of the WCAB's November 23, 2009, order denying reconsideration.

III. ISSUES

State Farm claims that:

1. The reports of Dr. Barras should be stricken and she should be disqualified as a medical examiner; and

2. The WCAB awarded caregiver fees which were excessive and unreasonable.

## IV. DISCUSSION

### A. *Standard of Review*

With regard to a petition for a writ of review, section 5952 states: "The review by the court shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether:

"(a) The appeals board acted without or in excess of its powers.

"(b) The order, decision, or award was procured by fraud.

"(c) The order, decision, or award was unreasonable.

"(d) The order, decision, or award was not supported by substantial evidence.

"(e) If findings of fact are made, such findings of fact support the order, decision, or award under review.

"Nothing in this section shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence."

"A decision by the WCAB that is based on factual findings which are supported by substantial evidence is affirmed by the reviewing court. Substantial evidence generally means evidence that is credible, reasonable, and of solid value, which a reasonable mind might accept as probative on the issues and adequate to support a conclusion. A factual finding, order, decision or award is not based on substantial evidence if unreasonable, illogical, arbitrary, improbable, or inequitable considering the entire record and statutory scheme. The reviewing court also may not isolate facts which support or disapprove of the WCAB's conclusions and ignore facts which rebut or explain the supporting evidence, but must examine the entire record. Similarly, the reviewing court may not reweigh evidence or decide disputed facts. [¶] Interpretation of governing statutes or application of the law to undisputed fact is decided de novo by the reviewing court, even though the WCAB's interpretation is entitled to great weight unless clearly erroneous." (*Zenith Ins. Co. v. Workers' Comp. Appeals Bd.* (2008) 159 Cal.App.4th 483, 490 [71 Cal.Rptr.3d 724], fns. omitted.)

B. *Applicants' Ex Parte Communications with the Medical Examiner Violated the Prohibition Against Such Communications in Workers' Compensation Regulations, Which Requires Striking the Medical Examiner's Reports and Opinions and Disqualification of the Medical Examiner*

State Farm claims that Dr. Barras's reports should be stricken and she should be disqualified as a medical examiner because Dr. Barras communicated ex parte with Apparicio and Pearson. We agree.

1. *There Was No Waiver of State Farm's Due Process Objection**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Prohibited Ex Parte Communication Between Dr. Barras and Claimants Apparicio and Pearson Requires Disqualification of Dr. Barras*

Dr. Barras appears to have been appointed as a medical examiner pursuant to section 5701, which states in relevant part: "The appeals board may . . . from time to time direct any employee claiming compensation[3] to be examined by a regular physician. The testimony so taken and the results of any inspection or examination shall be reported to the appeals board for its consideration."

State Farm alleged that Apparicio and Pearson scheduled an appointment with Dr. Barras without notifying State Farm, and did not provide State Farm with notice of the time, date, or location of the evaluation. State Farm further alleged that on the day of the evaluation, Apparicio and Pearson provided Dr. Barras with medical records for review which were partial and incomplete and did not include all medical records that State Farm would have provided Dr. Barras if State Farm had been notified of the date, time, and place of the evaluation. These communications with Dr. Barras were with respect to the merits, and were made in connection with Dr. Barras's April 18, 2008, report. The WCJ, moreover, relied on that report as a basis for the August 26, 2009, joint supplemental findings and award and opinion on supplemental decision. Apparicio and Pearson do not dispute that these ex parte communications with Dr. Barras occurred; they argue that no prejudice occurred and no bias was created.

---

*See footnote, *ante*, page 51.

3 " 'Compensation' means compensation under this division and includes every benefit or payment conferred by this division upon an injured employee . . . ." (§ 3207.)

 Ex parte communications with respect to the merits with a medical examiner appointed pursuant to section 5701 are prohibited. "All correspondence concerning the examination and reports of a physician appointed pursuant to Labor Code Section 5701 . . . shall be made through the Workers' Compensation Appeals Board, and no party, attorney or representative shall communicate with that physician with respect to the merits of the case unless ordered to do so by the Workers' Compensation Appeals Board." (Cal. Code Regs., tit. 8, § 10718.)[4] The prohibition against ex parte communication attempts to prevent decisions based on information not known to one or both parties. An action by "an administrative board exercising adjudicatory functions when based upon information of which the parties were not apprised and which they had no opportunity to controvert amounts to a denial of a hearing." (*English v. City of Long Beach* (1950) 35 Cal.2d 155, 158 [217 P.2d 22].) As a general principle, " 'Fundamental fairness in decisionmaking demands both that factual inputs and arguments to the decisionmaker on law and policy be made openly and be subject to argument by all parties.' " (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 9 [50 Cal.Rptr.3d 585, 145 P.3d 462].)

Other statutory provisions and regulations similarly prohibit ex parte communication with a medical examiner. Section 4062.3, subdivisions (e) and (f) prohibit ex parte communications with an agreed medical evaluator or a qualified medical evaluator,[5] as does the corresponding regulation.[6]

---

[4] California Code of Regulations, title 8, section 10718 was in effect when the ex parte communications took place. A nearly identical prohibition of ex parte communication with the medical examiner became effective on November 17, 2008, and thus was in effect when State Farm moved to strike Dr. Barras's April 18, 2008, report. California Code of Regulations, title 8, section 10213, subdivision (c) states: "All correspondence concerning the examination and reports of a physician appointed pursuant to Labor Code section 5701 . . . shall be made through the workers' compensation administrative law judge, and no party, attorney or representative shall communicate with that physician with respect to the merits of the case unless ordered to do so." (Cal. Code Regs., tit. 8, § 10213, subd. (c).)

[5] Section 4062.3, subdivisions (e) and (f) state: "(e) All communications with an agreed medical evaluator or a qualified medical evaluator selected from a panel before a medical evaluation shall be in writing and shall be served on the opposing party 20 days in advance of the evaluation. Any subsequent communication with the medical evaluator shall be in writing and shall be served on the opposing party when sent to the medical evaluator.

"(f) Ex parte communication with an agreed medical evaluator or a qualified medical evaluator selected from a panel is prohibited. If a party communicates with the agreed medical evaluator or the qualified medical evaluator in violation of subdivision (e), the aggrieved party may elect to terminate the medical evaluation and seek a new evaluation from another qualified medical evaluator to be selected according to Section 4062.1 or 4062.2, as applicable, or proceed with the initial evaluation."

[6] "Evaluators selected from a [qualified medical evaluator] panel provided by the Administrative Director shall not engage in ex parte communication in violation of Labor Code section 4062.3." (Cal. Code Regs., tit. 8, § 41, subd. (b).)

■ There are no exceptions for "administrative" or procedural communications or for other classes of ex parte communication which are not on the merits. (See *Alvarez v. Workers' Comp. Appeals Bd.* (2010) 187 Cal.App.4th 575, 586–588 [114 Cal.Rptr.3d 429].) The prohibition against ex parte communications is a strict rule, and no showing of prejudice is required to invoke the appropriate remedy. (*Id.* at p. 589.) ■ The applicant and lien claimant violated these requirements in a substantive manner. Dr. Barras should have been disqualified, the reports and opinions of Dr. Barras should have been stricken, and a new medical examiner should have been selected.

The opinion and order denying reconsideration must be annulled and the matter remanded with directions to appoint a new medical examiner. After receiving that medical examiner's report, the WCAB is to redetermine the expenses for medically necessary treatment for which State Farm is liable, and to recalculate the rate of that reimbursement.

> C. *The Award of Compensation to Pearson for Caregiver Services Was Unreasonable, Was Not Authorized by Section 4600, Subdivision (a), and Was Not Supported by Substantial Evidence*

State Farm claims that the WCAB erroneously awarded fees for caregiver services because reimbursement for services Pearson allegedly provided 24 hours per day, seven days per week was unreasonable, and because a $30 hourly rate of reimbursement was excessive.

> 1. *The Award of Compensation to Pearson for Caregiver Services 24 Hours Per Day, Seven Days Per Week Was Unreasonable and Was Not Supported by Substantial Evidence; Section 4600, Subdivision (a) Did Not Authorize Compensation by the Employer for Numerous Services Pearson Provided*

The WCAB affirmed the WCJ's finding that the nature of Apparicio's condition and the medications she received required that she be monitored and assisted 24 hours per day, seven days per week.

A first problem concerns the evidence supporting the finding that Pearson monitored and assisted Apparicio 24 hours per day, seven days per week. Apparicio provided evidence of caregiver services provided by Pearson in a list which set forth the daily average times that he provided services. These times do not total 24 hours per day, except for the final item, "assist [Apparicio] at night," which was listed as "24 hrs." An award of compensation based on Pearson's alleged caregiver services 24 hours per day, seven days per week is therefore unreasonable under section 5952, subdivision (c), and based on this record substantial evidence did not support this award under section 5952, subdivision (d).

A second problem with the evidence of caregiver services Pearson allegedly provided is that many of those services do not constitute treatment which the employer is required to provide the injured worker. The employer is required to provide an injured worker with care reasonably required to cure or relieve the worker from the effects of the injury. Section 4600, subdivision (a) states: "Medical, surgical, chiropractic, acupuncture, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatuses, including orthotic and prosthetic devices and services, that is reasonably required to cure or relieve the injured worker from the effects of his or her injury shall be provided by the employer. In the case of his or her neglect or refusal reasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment."

■ Care provided by a family member to monitor and manage the industrially injured worker's health care needs may qualify in some cases as medical care under section 4600. (*Hodgman v. Workers' Comp. Appeals Bd.* (2007) 155 Cal.App.4th 44, 54 [65 Cal.Rptr.3d 687] [mother of injured worker, who was also his conservator, could be reimbursed for monitoring and managing her son's health care needs].) In *Henson v. Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 452 [103 Cal.Rptr. 785], the worker's treating physician knew that practical nursing services were required and that the worker's wife was providing them. *Henson* found that the wife could be compensated for those services. (*Id.* at pp. 461–462.) *Smyers v. Workers' Comp. Appeals Bd.* (1984) 157 Cal.App.3d 36 [203 Cal.Rptr. 521] held that when a physician recommended or prescribed, for medical reasons, that housekeeping services be performed for the injured worker, those services could be reimbursed under section 4600 as medical treatment reasonably required to cure or relieve the effects of the injury. (157 Cal.App.3d at pp. 41–43.)

Apparicio's list of caregiver services provided by Pearson included numerous categories of caregiver services which do not appear to have qualified as medical treatment reasonably required by section 4600. The matter must be remanded to the WCAB to redetermine which of the caregiver services Pearson provided were "medical treatment" under section 4600 which the employer was required to provide or for which the employer was liable for reasonable expense incurred on behalf of the employee in providing treatment.

### 2. The Services to Be Compensated, and the Rate of Compensation for Caregiver Services Provided by Pearson, Must Be Redetermined

The WCAB affirmed the WCJ's finding that an appropriate rate for care provided by Pearson was $30 per hour. The WCJ cited Dr. Barras's life care plan, which included licensed vocational nursing services that Dr. Barras valued at $35 per hour. The WCJ also cited Pearson's testimony that State Farm provided services at a $30 hourly rate during 2002 before terminating those services for reasons State Farm never explained. The WCJ found that this fact, and Dr. Barras's opinion that Pearson's services were in the nature of an LVN's services, provided substantial evidence to support a $30 hourly rate. This finding was erroneous.

First, a $30 hourly payment for services which are not included under section 4600, subdivision (a) is unreasonable and is an act in excess of the powers of the appeals board (§ 5952, subds. (a) & (c)).

Second, the hourly rate of compensation was excessive for categories of services Pearson provided which were not LVN services.

### 3. Conclusion

The compensation of Pearson at a rate of $30 per hour, seven days a week, 24 hours a day was not justified.

1. Under the circumstances of this case, an award of compensation based on caregiver services provided seven days a week, 24 hours a day is unreasonable;

2. Some services provided by Pearson, if medically necessary and reasonable, were compensable as medical treatment but not at an LVN hourly rate.

3. Other services provided by Pearson do not appear to have been medically necessary, and were not services that section 4600, subdivision (a) required the employer to provide or for whose expense the employer was liable.

The opinion and order denying reconsideration must be annulled and the matter remanded for proceedings to redetermine the compensation to be awarded lien claimant Pearson after appointment of a new medical examiner and preparation of a new report.

## V. DISPOSITION

The opinion and order denying reconsideration is annulled and the matter is remanded for further proceedings consistent with this opinion. The parties are ordered to bear their own costs.

Croskey, Acting P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied February 17, 2011, and the petition of respondent Carl James Pearson for review by the Supreme Court was denied April 27, 2011, S191293.