Filed 12/10/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MALAGA COUNTY WATER DISTRICT,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>CENTRAL VALLEY REGIONAL WATER QUALITY CONTROL BOARD,<br><br>     Defendant and Appellant. | F078327<br><br>(Super. Ct. No. 16CECG03036)<br><br><br>**OPINION** |

APPEAL from an order of the Superior Court of Fresno County. Rosemary T. McGuire, Judge.

Xavier Becerra, Attorney General, Robert W. Byrne, Assistant Attorney General, Randy L. Barrow and Nhu Q. Nguyen, Deputy Attorneys General, for Defendant and Appellant.

Costanzo & Associates and Neal E. Costanzo for Plaintiff and Respondent.

-ooOoo-

This is one of several cases before this court involving disputes between the Malaga County Water District (Malaga) and the agencies involved in issuing and enforcing the permits necessary for Malaga to operate its waste treatment facility. This appeal arises out of a 2016 administrative civil liability complaint (ACL) issued to Malaga by the Central Valley Regional Water Quality Control Board (Water Quality

Board or Board).[1]  The subsequent administrative hearing on the ACL resulted in a civil liability penalty of more than $1 million.  Malaga sought review of this award and, in proceedings before the trial court, prevailed on the theory that the hearing procedure document utilized to control the proceedings constituted an improper underground regulation.  In this appeal, the Water Quality Board appeals from that finding and the trial court's subsequent determination that a new hearing must be provided.  The Water Quality Board contends both that the document at issue is not an underground regulation and that, even if it is, a new hearing is only required if Malaga can demonstrate prejudice from its use in the hearing.  For the reasons set forth below, we conclude that while portions of the hearing procedure constituted a void underground regulation, the trial court incorrectly remanded the matter without considering whether the use of those procedural regulations was harmless.  We thus reverse the trial court's order and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

As a general background, Malaga is a county water district responsible for the collection, processing, treatment, and eventual discharge of wastewater.  Its conduct is heavily regulated, both by federal and state laws, resulting in significant treatment and reporting requirements generally defined by regulations and the permits issued to Malaga to engage in its business.

*Overview of the ACL*

The underpinning of this case is the ACL issued to Malaga in January 2016.  The ACL alleged a multi-year failure on Malaga's part to properly document its wastewater treatment facility actions and to properly treat wastewater managed by the facility.  The problems appear to have arisen by at least 2008, with the ACL alleging a March 2008

---

[1]  This is the first of two appeals arising out of Fresno Superior Court case No. 16CECG03036.

2.

notice to cease discharges violating the relevant permit. Additional problems are identified in the ACL from February 2010, August 2010, July 2012, January 2014, July 2014, and March 2015, among others.

The ACL broke these violations down into two categories, alleging both had resulted in chronic daily violations for significant periods of time. Violation 1 was defined as a failure to implement a legally sufficient pretreatment program and included allegations Malaga failed, as required under the regulatory scheme, to obtain necessary permits, to inspect and sample some of its significant industrial users, to publish a list of significant non-compliant users, to determine if slug control plans were necessary for certain significant industrial users, to file proper annual and quarterly pretreatment reports, and to properly analyze its self-monitoring reports. It alleged these were daily violations from March 14, 2008, through January 31, 2015, a total of 2,515 days, resulting in a potential penalty of $25,150,000. The penalty recommended was $775,368.

Violation 2 was defined as a failure to submit a treatment and disposal capacity study and propose a workplan as required by actions taken in 2008. The violation was alleged to have lasted 1,640 days, resulting in a possible penalty of $8,200,000. The recommended penalty was $261,360, making the ACL's total requested penalty $1,036,728. A hearing on the ACL was scheduled for April 21 and 22, 2016.

*The Hearing Procedure Document*

Directly relevant to the issues raised in his appeal, attached to the ACL, along with many other attachments, was a document titled "Hearing Procedure for Administrative Civil Liability Complaint R5-2016-0512 [¶] Issued to Malaga County Water District Fresno County"[2] (Hearing Procedure). As the trial court concluded, this document constituted an underground regulation and we summarize it in substantial detail.

---

**2** Boldface, underlining, and some capitalization are omitted from ACL titles and subheadings throughout this opinion.

The Hearing Procedure begins with an introduction noting that a complaint has been issued that could result in civil liability, the tentative dates and location for the hearing, and information on how to determine the exact date of the hearing. The introduction also specifies that there are two teams of people at the Water Quality Board, the Prosecution Team and the Advisory Team, identifies their roles in the proceedings, and informs Malaga that these two groups "have not communicated" regarding "any substantive matter at issue in the proceeding." The introduction then provides the following paragraph:

"With the exception of the 'Hearing Time Limits' section, the Board Chair has approved this Hearing Procedure for the adjudication of ACL matters. Objections to this Hearing Procedure must be sent to the Board's Advisory Team no later than the deadline listed on the 'Important Deadlines' page of this Hearing Procedure. The Board's Advisory Team will promptly respond to all timely objections to this Hearing Procedure after consulting with the Board Chair."

Following the introduction are six numbered sections providing various details about the upcoming hearing and its procedures. The first, titled "Hearing Participants," provides definitions for "Designated Parties" and "Interested Persons" before identifying the Prosecution Team and Malaga as designated parties in the proceedings.

The second section, titled "Hearing Time Limits," provides each designated party will receive 60 minutes for their case and "may allocate their allotted time as they see fit," and "Interested Persons will have 3 minutes to present statements." The section explains additional time may be requested and would be provided "at the discretion of the Advisory Team (prior to the hearing) or the Board Chair (at the hearing) upon a showing that additional time is necessary."

The third section, titled "Documents in Evidence and Availability of Board Files," notes the Prosecution Team maintains a file for the case at their office and that documents received will be placed in that file unless excluded by the Water Quality

4.

Board.  It notes the file is available to the public, provides a website where those files can be accessed, and cautions that the website may not be the most up-to-date source for newly filed documents.

The fourth section is more detailed and is titled "Submittal of Evidence, Legal and Technical Arguments or Analysis, and Policy Statements."  It begins by stating that all designated parties must submit four types of evidence in advance of the hearing:  (1) "All evidence that the Designated Party would like the Board to consider," with the caveat that evidence already in the Water Quality Board's files may be submitted by reference if clearly identified; (2) "All legal and technical arguments or analysis"; (3) "The name of each witness (including Board staff) whom the Designated Party intends to call," the subjects those witnesses will cover, and an estimated time for their presentation, with a caveat that testimony at the hearing "may not exceed the scope of previously-submitted written material"; and (4) "The qualifications of each expert witness, if any."

From there, the fourth section provides a series of subheadings discussing various aspects of evidence and document submission.  It begins by reciting a "Prohibition on Surprise Evidence," stating, "In accordance with California Code of Regulations, title 23, section 648.4, the [Water Quality] Board endeavors to avoid surprise testimony or evidence.  Absent a showing of good cause and lack of prejudice to the parties, the Board Chair may exclude material that is not submitted in accordance with this Hearing Procedure.  Excluded material will not be considered by the Board."  The next subheading, "Prosecution Team's Evidence," requires submission of "the legal and factual basis for each" claim brought against Malaga, including "a list of all evidence on which the Prosecution Team relies, including all documents cited in the ACL."  This is followed by a subheading titled "Designated Parties' (including [Malaga]'s) Evidence," which requires all other parties to "submit all evidence not already cited by the Board's Prosecution Team and all their legal and technical arguments or analysis no later than" a deadline provided later in the document.  Next is the "Rebuttal Evidence" subheading,

5.

providing "evidence offered to disprove or contradict evidence presented by an opposing party" must be "submitted prior to the start of the hearing in order to ensure the fairness and orderly conduct of the proceeding." Following these are additional subheadings that (1) limit the number of paper pages printed for the hearing to 120 pages per side while noting all documents will be kept electronically and explaining that if those pages are not designated by the parties they will comprise the first 120 pages submitted but exclude several documents from the Prosecution Team's count, and (2) set deadlines for interested persons statements and responses.

The fifth section is titled "Miscellaneous Matters" and includes five subheadings. These (1) require the Prosecution Team to prepare a summary agenda detailing each side's positions and a proposed order; (2) permit the use of PowerPoint or other visual exhibits provided they do not exceed the scope of the written materials and both hard and electronic copies are provided; (3) require witnesses who have submitted written testimony to be present and available for cross-examination, with their failure to appear potentially rendering their testimony hearsay; (4) prohibit ex parte communications with the exception that communications "regarding non-controversial procedural matters are not considered ex parte contacts and are not restricted"; and (5) note that the regulations governing the proceedings are available online with copies available upon request, that "[a]ny procedures not provided by this Hearing Procedure are not applicable to this hearing," and that chapter 5 of the Administrative Procedure Act (APA; Gov. Code, § 11500 et seq.) does not apply to the hearing, except as required.

The sixth section instructs that questions can be addressed to the Advisory Team and is followed by a contact information sheet listing primary contacts for the Advisory Team, Prosecution Team, and Malaga.

The final page of the Hearing Procedure is titled "Important Deadlines" and is a summary of deadlines for the case. It includes notes that all submissions must be received by 5:00 p.m. on the due date and only need to be submitted electronically, while

6.

reminding designated parties of the 120-page limit for printed materials. It also notes that all documents will be placed online and asks for both redacted and unredacted versions, if needed. The deadlines then begin with an identification that on January 27, 2016, the Prosecution Team issued the ACL. Nine days later, on February 5, 2016, the document provides that objections to the Hearing Procedure are due along with a deadline to request "Designated Party" status. Eleven days after that, February 16, 2016, is Malaga's deadline to submit a 90-day "Hearing Waiver Form." Three days later, or 23 days after the ACL issued, is the Prosecution Team's deadline to submit documents under the fourth section of the Hearing Procedure. Twenty-one days after that, or March 11, 2016, is the deadline for remaining designated parties to submit their documents. Twenty days later, on March 31, 2016, is the deadline for rebuttal evidence, requests for additional time, responses to interested persons statements, the Prosecution Team summary sheet, and any desired additional paper copies. The hearing is then set for 21 days later, on April 21 and 22, 2016.

*Overview of the Hearing and Writ Proceedings*

Malaga submitted objections to the Hearing Procedure and several other aspects of the hearing, and initially identified nearly 12 hours of testimony it expected to provide.[3] Malaga's objections were all overruled. On Malaga's objections to the Hearing Procedure specifically, the ruling stated the document "adheres to a template hearing procedure approved by the Board Chair on May 22, 2015," that the hearing time limits were set by the Prosecution Team, and that the document conforms to the State Board's regulations.

---

**3** It appears that Malaga did not submit its objections to the Hearing Procedure within the timeframe contemplated by that document. It is unclear if the timing of that submission was relevant to any pre-hearing rulings. No issue has been raised at this time with respect to the timing of the objections. Similarly, our ruling here takes no position on the timeliness of the objections or how the timeframe may have affected Malaga's rights.

Malaga raised several additional objections at the hearing which we do not recount here. Each was overruled. Malaga was then held to a strict time limit. Ultimately, the Water Quality Board found Malaga had committed the acts alleged in the ACL and imposed a penalty of more than $1 million.

Malaga appealed this decision to the State Water Resources Control Board, which statutorily denied the appeal through inaction. Malaga then filed the underlying writ petition, which raised a host of issues with the proceedings including the claim that the Hearing Procedure constituted an underground regulation.

The trial court took briefing, heard oral argument, and issued a written order granting Malaga's writ petition on the ground that the "Hearing Procedures used to govern the administrative hearing in this matter are invalid." After reciting relevant provisions of the APA and the appropriate analysis for determining an underground regulation, the trial court concluded that, based on the document's internal language stating the "Board Chair has approved this Hearing Procedure for the adjudication of ACL matters," the document "is, by definition, a general rule or guideline intended to govern the Board's procedure." Noting that the Water Quality Board did not contend the Hearing Procedure was adopted under the APA and concluding the Hearing Procedure was not exempt from those statutory requirements, the trial court found the Hearing Procedure to be an invalid underground regulation.

The court next turned to the appropriate remedy. Relying on *Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324 (*Morning Star*), the court noted that, in that case, the use of an invalid regulation required a remand so that the agency could conduct further proceedings without relying upon the invalid regulation. Applying this analysis, the trial court determined the Water Quality Board "may adopt new Hearing Procedures pursuant to the APA and rehear the matter, or may instead use the procedures provided for in the APA to rehear the matter." The trial court thus granted the writ, commanding the Water Quality Board grant Malaga a new hearing. Based on this

8.

conclusion, the trial court determined it need not reach any of the other arguments Malaga raised in its writ petition.

This appeal timely followed.

## DISCUSSION

Although the resolution of this case turns upon a relatively straightforward analytical structure, the background regulatory and legal framework is fundamental to conducting that analysis. As such, we begin by laying out the regulatory and legal framework, as well as the standards for our review, before proceeding to consider whether a void underground regulation was utilized, and if so, how the case should proceed on remand. Ultimately, we conclude that portions of the Hearing Procedure do, in fact, constitute a void underground regulation. However, unlike the trial court, we do not conclude that a rehearing is proper at this stage. Rather, we remand the matter to the trial court to determine whether use of the void regulations was prejudicial and, if not, to resolve any further disputes in this matter.

### *Overview of Relevant Regulations*

As part of its defense of the Hearing Procedure in this case, the Water Quality Board argues that the Hearing Procedure is little more than a recitation of the regulations for such proceedings found at California Code of Regulations, title 23, sections 648 through 648.8.[4] We thus initially summarize those regulations for context.

Regulation 648 is titled "Laws Governing Adjudicative Proceedings." (Cal. Code Regs., tit. 23, § 648.) It defines what constitutes an adjudicative proceeding (*id*., subd. (a)), incorporates the following regulations, portions of the APA and other relevant statutes as controlling such proceedings (*id*., subd. (b)), but then carves out a significant portion of the APA (*id*., subd. (c)) before concluding that the "presiding officer may

---

[4]     To more easily differentiate the applicable regulations from relevant statutes, we shall refer to various sections in the regulatory framework as "regulation." For example, California Code of Regulations, title 23, section 648, will be identified as "regulation 648."

9.

waive any requirements in these regulations pertaining to the conduct of adjudicative proceedings including but not limited to the introduction of evidence, the order of proceeding, the examination or cross-examination of witnesses, and the presentation of argument, so long as those requirements are not mandated by state or federal statute or by the state or federal constitutions" (*id*., subd. (d)).

Regulation 648.1 then defines the parties included in an adjudicative proceeding. It broadly provides that the parties "shall include the person or persons to whom the agency action is directed and any other person whom the Board determines should be designated as a party. The hearing notice may specify a procedure for designation of the parties to a particular adjudicative proceeding." (Cal. Code Regs., tit. 23, § 648.1, subd. (a).) It further discusses interested persons and provides in part that the "presiding officer may provide an opportunity for presentation of policy statements or comments, either orally or in writing, by interested persons who are not participating as parties in the proceeding. Persons presenting nonevidentiary policy statements will not be subject to cross-examination but may be asked to respond to clarifying questions from the Board, staff, or others, at the discretion of the Board or presiding officer. The criteria and procedures applicable to participation in a Board adjudicative proceeding as an interested person may be established in the hearing notice or by the presiding officer." (*Id*., subd. (d).)

Regulation 648.2 provides authority to take judicial notice of various facts. It permits judicial notice of such facts as may be noticed by courts of the state or "any generally accepted technical or scientific matter within the Board's field of expertise, provided parties appearing at the hearing shall be informed of the matters to be noticed." (Cal. Code Regs., tit. 23, § 648.2.) It further requires notice of such matters and a reasonable opportunity to refute technical or scientific matters. (*Ibid*.)

Regulation 648.3 permits admission of certain public records into evidence. It leaves to the discretion of the Board whether to receive public agency documents "if

10.

otherwise admissible" without "the necessity of supplying copies to the Board and other parties provided the original or a copy is in the possession of the Board and the specific file folder or other exact location where it can be found is identified," and the party offering the document identifies the particular portions on which they will rely. (Cal. Code Regs., tit. 23, § 648.3.)

Regulation 648.4 discusses the identification of witnesses and introduction of their testimony and exhibits. It begins by stating, "[i]t is the policy of the State and Regional Boards to discourage the introduction of surprise testimony and exhibits." (Cal. Code Regs., tit. 23, § 648.4, subd. (a).) It then provides the "hearing notice may require that all parties intending to present evidence at a hearing shall submit the following information to the Board prior to the hearing: the name of each witness whom the party intends to call at the hearing, the subject of each witness'[s] proposed testimony, the estimated time required by the witness to present direct testimony, and the qualifications of each expert witness. The required information shall be submitted in accordance with the procedure specified in the hearing notice." (*Id*., subd. (b).) It further states the notice "may require that direct testimony be submitted in writing prior to the hearing." (*Id*., subd. (c).)

Following these provisions, regulation 648.4 requires that any "witness providing written testimony shall appear at the hearing and affirm that the written testimony is true and correct." (Cal. Code Regs., tit. 23, § 648.4, subd. (d).) It explains that where "any of the provisions of this section have not been complied with, the presiding officer may refuse to admit the proposed testimony or the proposed exhibit into evidence, and shall refuse to do so where there is a showing of prejudice to any party or the Board. This rule may be modified where a party demonstrates that compliance would create severe hardship." (*Id*., subd. (e).) Finally, the regulation concludes that "[r]ebuttal testimony generally will not be required to be submitted in writing, nor will rebuttal testimony and exhibits be required to be submitted prior to the start of the hearing." (*Id*., subd. (f).)

11.

Regulation 648.5 sets the order of proceedings, initially providing a recommendation for the order of presentations but explains that "[a]djudicative proceedings shall be conducted in a manner as the Board deems most suitable to the particular case with a view toward securing relevant information expeditiously without unnecessary delay and expense to the parties and to the Board." (Cal. Code Regs., tit. 23, § 648.5, subd. (a).) It notes that questions from the Board "shall be in order at any time" (*id.*, subd. (b)), and that the Board may permit redirect and recross-examination, the presentation of policy statements, and closing statements (*id.*, subds. (b),(c),(d)).

Regulation 648.5.1 explains, "Adjudicative proceedings will be conducted in accordance with the provisions and rules of evidence set forth in Government Code section 11513. Hearsay evidence is admissible subject to the provisions of Government Code section 11513." (Cal. Code Regs., tit. 23, § 648.5.1.)

Regulation 648.6 discusses alternative dispute resolution options (Cal. Code Regs., tit. 23, § 648.6), while regulation 648.7 notes how the Board may conduct informal hearings if desired (Cal. Code Regs., tit. 23, § 648.7). Finally, regulation 648.8 provides authority for the Board to issue sanctions or contempt orders under certain circumstances. (Cal. Code Regs., tit. 23, § 648.8.)

*Overview of Relevant Law*

The APA provides that "[n ]o state agency shall issue, utilize, enforce, or attempt to enforce ... a regulation" without complying with the APA's notice and comment provisions. (Gov. Code, § 11340.5, subd. (a).) This requirement is applicable to regulations utilized by the Water Quality Board. (Gov. Code, § 11400.20, subd. (b)(3) ["Permanent regulations are subject to all the provisions of Chapter 3.5 (commencing with Section 11340)"]; Cal. Code Regs., tit. 23, § 648, subd. (b) ["Except as otherwise provided, all adjudicative proceedings before the State Board, the Regional Boards, or hearing officers or panels appointed by any of those Boards shall be governed by these regulations, chapter 4.5 of the Administrative Procedure Act (commencing with

12.

section 11400 of the Government Code), sections 801–805 of the Evidence Code, and section 11513 of the Government Code"].)

Under the APA, "regulation" is defined as "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." (Gov. Code, § 11342.600.) This is a very broad definition, providing two principal identifying characteristics for regulations. (See *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571 (*Tidewater*).) "First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must 'implement, interpret, or make specific the law enforced or administered by [the agency], or ... govern [the agency's] procedure.' " (*Ibid.*)

## Standard of Review

Decisions made by the Water Quality Board or the State Water Resources Control Board may be reviewed by way of a writ of mandate. (Wat. Code, § 13330, subds. (a), (b).) These writ proceedings are governed by Code of Civil Procedure section 1094.5. (Wat. Code, § 13330 subd. (e).) In such proceedings, the trial court's review "shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) An abuse of discretion can occur three different ways: (1) "the respondent has not proceeded in the manner required by law"; (2) the "decision is not supported by the findings"; or (3) "the findings are not supported by the evidence." (*Ibid.*)

The case law does not precisely define the complete standard of review when the underlying question is whether the administrative agency promulgated and relied upon an

13.

underground regulation. *Tidewater* and similar cases treat the issue of whether an agency's interpretation of a law or regulation constitutes an underground regulation as an issue of pure law. (See *Tidewater*, *supra*, 14 Cal.4th at p. 572 [independently reviewing the record and determining, as a matter of law, that the disputed policy was an underground regulation]; *Grier v. Kizer* (1990) 219 Cal.App.3d 422, 434, disapproved on other grounds by *Tidewater* [noting the "the issue ultimately is one of law for this court"].) This analysis, however, typically arises in the context of claims that the agency's interpretation is the only legitimate one available and thus cannot be an underground regulation. In the broader analysis, however, as *Tidewater* notes, one of the two factors for determining whether an underground regulation exists is whether the agency intends its policy or document apply to cases generally. (*Tidewater*, at p. 571.)

Malaga argues this determination is factual in nature and thus entitled to a more deferential standard of review. The Water Quality Board contends there are no actual disputed factual questions in this matter, and thus the issue should be resolved by a de novo standard of review.

We agree with the Water Quality Board that the standard in this case is purely de novo. While it appears that the full analysis in cases such as this would constitute a mixed question of law and fact, particularly with respect to the intent element, this case does not raise any factual dispute. Similar to *Tidewater*, where the court noted the relevant policy "was expressly intended as a rule of general application," and that "the record does not establish that the policy was, either in form or substance, merely a restatement or summary of how" the agency had acted in the past (*Tidewater*, *supra*, 14 Cal.4th at p. 572), there is no indication of a factual dispute that would trigger any additional standards of review. The Hearing Procedure in this case is clearly labeled as implementing an existing determination applicable to all adjudications and this fact is confirmed by email between the parties. While we acknowledge and discuss the Water Quality Board's general claim the Hearing Procedure was specific to this case at a later

point, we take this up on legal, not factual, grounds. Accordingly, there are, as the Water Quality Board argues, no factual disputes relevant to the issues in this appeal. Our review is thus a de novo analysis of the conclusion the Hearing Procedure constituted an underground regulation.

### *The Hearing Procedure Document is an Underground Regulation*

The trial court determined that the Hearing Procedure utilized in this case was an underground regulation. The Water Quality Board contests this conclusion, raising claims that the Hearing Procedure is nothing more than a restatement of previously adopted regulations; that it is not a document for general use; and that it met the requirements of Government Code section 11425.10 and thus was not required to be adopted under the APA. We agree with the trial court that the Hearing Procedure constitutes an underground regulation.

As explained above, and as relevant to this case, a regulation under the APA is any order or standard of general application by any state agency to govern its procedure. (Gov. Code, § 11342.600.) When determining if an order or standard is a regulation, two factors are reviewed. First, whether the agency intended the order or standard to apply generally. And second, whether the order or standard governs the agency's procedure. (See *Tidewater*, *supra*, 14 Cal.4th at p. 571.)

1. The Hearing Procedure Applies Generally

On the first factor, the Water Quality Board argues the Hearing Procedure, issued for use in this case only, is not intended to apply generally and thus cannot qualify as a regulation. We do not agree. While it is correct that the document issued in this case was intended for use in this case alone, it is not correct that this excludes the underlying content from qualification as an underground regulation. Rather, the record is uncontradicted that the Hearing Procedure issued, save for the section on time limits for presentation, consists of previously adopted positions approved by the chair of the Water Quality Board. Indeed, in rejecting Malaga's objections to the document, the Water

15.

Quality Board admitted the Hearing Procedure "adheres to a template hearing procedure approved by the Board Chair on May 22, 2015."

Thus, while the Hearing Procedure issued in this case may have been tailored in one section to the pending proceedings, its underlying content was consistent with a longstanding practice previously adopted for all similar cases. In this way, the Hearing Procedure is like the interpretation of the law consistently applied, but not formally written down, in *Morning Star*, *supra*, 38 Cal.4th at pages 335 through 336. There, when faced with how to view an existing practice that was applied uniformly but not formally adopted, our Supreme Court explained the "record establishes that the Department[ of Toxic Substances Control]'s construction and application of [the law] have been as fixed and far reaching as would be the case if a written policy had been issued. We decline to endorse an approach that would allow an agency to avoid APA requirements simply by driving its regulations further underground." (*Id*. at p. 336.) Here the case is stronger for finding a regulation exists as the underlying procedural decisions have been formally included in a template adopted for all cases. Further, the ability to object to the Hearing Procedures cannot save the document, as this places the burden on Malaga to demonstrate the document is improper, further solidifying its consistent use. We, like our Supreme Court, decline to endorse an approach that would allow an agency to avoid APA requirements by driving a regulation further underground, in this case by repeating a settled policy in individual cases with minimal modification.

2. The Hearing Procedure Governs Agency Procedures

On the second factor, the Water Quality Board contends the Hearing Procedure does not govern the agency's procedures, but rather merely implements the properly adopted regulations found at California Code of Regulations, title 23, section 648 et seq. Relying on *Liquid Chemical Corp. v. Department of Health Services* (1991) 227 Cal.App.3d 1682 (*Liquid Chemical*) the Water Quality Board argues, "the Malaga hearing was conducted pursuant to the applicable duly adopted regulations, and every

16.

requirement in the Hearing Procedure implemented one of the ten duly adopted regulations that govern the Board's adjudicative proceeding," comparing the Hearing Procedure to the flow chart utilized in that case.

In *Liquid Chemical*, this court considered whether certain exhibits utilized to determine whether a metal galvanizing process created hazardous materials constituted improper underground regulations, thereby barring the imposition of penalties imposed against the galvanizer. (*Liquid Chemical*, *supra*, 227 Cal.App.3d at pp. 1687–1688, 1694.) These exhibits comprised a flow chart exemplifying how certain statutes defined waste and utilizing dictionary definitions for certain terms; a model showing the relationship between products, residuals, and byproducts taking definitions from the Code of Federal Regulations and the dictionary; and a document providing the agencies interpretation of a specific term of art. (*Id*. at pp. 1695–1696.) While the trial court concluded the exhibits "arguably constitute regulations," this court did not agree, concluding the "exhibits in question were merely illustrative of actual laws and regulations which had been duly adopted." (*Ibid*.) More importantly, however, this court found that the underlying rules and regulations defining whether a material was hazardous waste were well known and available to the agency, meaning that "[e]ven though staff members … might have referred to the flow charts or the memos, they did not need to rely upon those documents," and thus "[a]ppellants were not prejudiced by staff members' review of such documents." (*Id*. at p. 1698.)

While this court's ultimate holding, then, was that any reliance on such documents did not prejudice the appellant, its note that the documents were merely illustrative is the basis of one of the common defenses to a claim an agency has adopted an underground regulation by interpreting the law—that the agency's interpretation is the only reasonable view. (See *Tidewater*, *supra*, 14 Cal.4th at p. 574, citing *Liquid Chemical*.) Thus, for the Water Quality Board's contention to succeed, the Hearing Procedure must either

17.

specifically implement or utilize the only reasonable reading of the procedures already adopted.  For the reasons below, we conclude it does not.

While many of the regulations adopted in California Code of Regulations, title 23, section 648 et seq. set forth specific requirements for future administrative proceedings, others provide a range of available options or general guidance.  One example is regulation 648.4, which begins by permitting the Water Quality Board to "require that all parties intending to present evidence at a hearing" submit certain types of evidence— such as (1) the name of each witness, (2) the subject of each witness's proposed testimony, (3) the estimated time for each witness's direct testimony, and (4) the qualifications of each expert witness—according to rules set forth in the hearing procedures.  (Cal. Code Regs., tit. 23, § 648.4, subd. (b).)  It then specifies that when such a requirement is implemented, but not met, "the presiding officer may refuse to admit the proposed testimony or the proposed exhibit into evidence, and shall refuse to do so where there is a showing of prejudice to any party or the Board" with an exception where hardship can be shown.  (*Id*., subd. (e).)  The regulation concludes by providing policy guidance, explaining that "[r]ebuttal testimony generally will not be required to be submitted in writing, nor will rebuttal testimony and exhibits be required to be submitted prior to the start of the hearing."  (*Id*., subd. (f).)

The Water Quality Board argues regulation 648.4 is implemented in the fourth section of the Hearing Procedure, under the heading "Submittal of Evidence, Legal and Technical Arguments or Analysis, and Policy Statements."  The Board states that the requirements set forth in that section implement several of the permissive requirements contained in regulation 648.4, subdivisions (b) and (c).  And it contends that the Hearing Procedure's requirement for "the parties to submit rebuttal evidence prior to the start of the hearing in order to ensure the fairness and orderly conduct of the proceeding" implements the policy guidance in regulation 648.4, subdivision (f).

18.

Notably, the Hearing Procedure also contains a restatement of subdivision (e), when it provides its "Prohibition on Surprise Evidence" and states, "In accordance with California Code of Regulations, title 23, section 648.4, the [Water Quality] Board endeavors to avoid surprise testimony or evidence. Absent a showing of good cause and lack of prejudice to the parties, the Board Chair may exclude material that is not submitted in accordance with this Hearing Procedure. Excluded material will not be considered by the Board." (See Cal. Code Regs., tit. 23, § 648.4, subd. (e) [Where "any of the provisions of this section have not been complied with, the presiding officer may refuse to admit the proposed testimony or the proposed exhibit into evidence, and shall refuse to do so where there is a showing of prejudice to any party or the Board. This rule may be modified where a party demonstrates that compliance would create severe hardship"].)

Looking at the requirements of the Hearing Procedure in comparison to regulation 648.4, however, it is apparent that the document does not merely recite or implement previously adopted regulations. The clearest example comes from the Hearing Procedure's requirement that the parties submit rebuttal evidence prior to the start of the proceedings. While it is true that the underlying regulations permit modification of the rules and emphasize the need for fairness and a lack of surprise in the proceedings, the direct language of regulation 648.4, subdivision (f) states that "[r]ebuttal testimony generally will not be required to be submitted in writing, nor will rebuttal testimony and exhibits be required to be submitted prior to the start of the hearing." (Cal. Code Regs., tit. 23, § 648.4, subd. (f).) In contrast to this, the Hearing Procedure directly requires the submission of rebuttal evidence prior to the start of the hearing.

The Hearing Procedure does not merely implement the regulation. Rather, it contradicts it; thereby limiting rights provided by a duly adopted regulation through a generally applicable order that has not been publicly vetted to an equal degree. Moreover, the fact that modification in individual instances is proper under the regulation

19.

cannot save this procedure from constituting an underground regulation. The test set forth by our Supreme Court seeks to suss out when a general order governs an agency's overall proceedings versus when an agency's decision applies only to the proceedings immediately before it. Where a permanent change to a duly adopted regulation is the norm, permission to change the norm in individual circumstances is rendered meaningless as individual circumstances will not be considered in the first instance. For similar reasons, the ability to object to the Hearing Procedure does not undercut the conclusion it is, at least in part, an underground regulation. The mere fact that an objection is required to request the duly adopted regulatory proceedings, thereby placing the burden of objection and presumably the burden of persuasion on Malaga, shows that the Hearing Procedure has already supplanted the regulation intended to cover the proceedings.

Although less direct, a similar problem arises with the Hearing Procedure's implementation of permissive regulations, such as regulation 648.4, subdivision (b) which states that the "hearing notice may require that all parties intending to present evidence at a hearing shall submit the following information to the Board prior to the hearing: the name of each witness whom the party intends to call at the hearing, the subject of each witness'[s] proposed testimony, the estimated time required by the witness to present direct testimony, and the qualifications of each expert witness." (Cal. Code Regs., tit. 23, § 648.4, subd. (b).) While there would likely be no issue with a base implementation of the permissive regulation, i.e., a document that implemented only the four permitted requirements (see *County of Butte v. Emergency Medical Services Authority* (2010) 187 Cal.App.4th 1175, 1200 [noting the choice to exercise power granted by a statute does not render that choice an underground regulation]), the Hearing Procedure here added additional requirements such as the submission of all evidence and all legal and technical arguments or analysis that either party intended to rely upon.

These requirements were beyond those permitted in the regulations and, when imposed as a general requirement for all cases, also satisfy the test for an underground regulation.

These changes are sufficient to determine that portions of the Hearing Procedure do, in fact, constitute an underground regulation based on the decision to implement a standard set of procedural rules for all administrative hearings that exceed the options made available in the duly adopted regulations. We note that additional areas of the Hearing Procedure may also be problematic. In particular, on the record before us, it appears the section titled "Important Deadlines" may also constitute an underground regulation. There are no indications in the duly adopted regulations that specific time frames should be implemented for providing and responding to submissions, yet the record here suggests that a template has been devised granting specific amounts of time for each procedure (with possible modifications made for weekends given that some timeframes are not equal in the Hearing Procedure in this case). While the specific dates chosen are unique to this case, any regularly utilized rules on responsive timeframes not supported by law or a duly adopted regulation would constitute an underground regulation under the broad auspices of the test articulated in *Tidewater*. While such concerns could easily be mitigated by having the parties provide proposed schedules consistent with the duly adopted regulations and selecting from within those proposals, the record here does not indicate any such individualized conduct.

3. <u>Government Code Section 11425.10 Does Not Protect the Hearing Procedure</u>

As a connected argument, the Water Quality Board argues that in "addition to implementing the applicable regulations, and tailoring the procedure for the Malaga proceeding, the Hearing Procedure also met the requirements of Government Code section 11425.10 as a governing procedure." We do not agree.

Government Code section 11425.10 provides that "governing procedure by which an agency conducts an adjudicative proceeding is subject to" nine specific requirements. (Gov. Code, § 11425.10, subd. (a).) It then goes on to state, the "requirements of this

21.

section apply to the governing procedure by which an agency conducts an adjudicative proceeding without further action by the agency, and prevail over a conflicting or inconsistent provision of the governing procedure, subject to [Government Code s]ection 11415.20. The governing procedure by which an agency conducts an adjudicative proceeding may include provisions equivalent to, or more protective of the rights of the person to which the agency action is directed than, the requirements of this section." (*Id.*, subd. (b).)

Relying on the fact that this governing procedure must be made available to the person to which the agency action is directed, the Water Quality Board states there is "no requirement that a hearing procedure that complies with the Administrative Adjudication of [*sic*] Bill of Rights[5] and merely implements governing procedures that have already been duly adopted under the APA must also be separately adopted as its own separate regulation." As noted above, we have already rejected the assertion that the Hearing Procedure in this case merely implemented previously adopted regulations and have held that at least some provisions of the document constitute procedural requirements governing cases other than Malaga's. These conclusions undercut the Water Quality Board's primary argument. We further note, however, that the obligation to make the hearing procedures available and the ability to provide additional protections to those subject to the agency actions does not relieve the Water Quality Board of its APA obligations should it seek to set a general set of rules for all cases. Even if more protective, the public's right to transparency and opportunity to comment would still apply to any de facto regulation utilized in the agency's hearings.

---

**5** The Administrative Adjudication Bill of Rights generally refers to Government Code sections 11425.10 through 11428.

22.

Accordingly, we conclude, in line with the trial court's conclusion, that portions of the Hearing Procedure utilized in this case constitute a void underground regulation. We thus turn to how to treat such a violation.

## *Use of an Underground Regulation Does Not Mandate Reversal*

The decision how to proceed following the determination that an underground regulation has been utilized in this case is a complicated issue. Malaga contends that any violation of the APA in this context qualifies as a deprivation of due process requiring an automatic reversal. The Water Quality Board contends a showing of prejudice is required.[6] The trial court sided with Malaga and ordered the Water Quality Board to conduct a hearing in which it did not utilize the underground regulation.

As Malaga points out in its briefing, this issue is complicated by the lack of case law involving underground regulations related exclusively to the procedures governing administrative proceedings. The parties have pointed us to no case, and this court has identified none, dealing with this precise issue. Rather, the cases identified deal with agency interpretations of substantive areas of the law. However, upon review, we conclude the principles elicited in these cases are sufficiently sound to apply equally to regulations governing procedure, with the caveat that the regulation will be reviewed to determine whether it prejudiced a party's due process rights rather than to determine whether the agency's underground regulation is correct as a matter of law.

We begin by summarizing the base principles regarding resolutions from various cases in this area, starting with *Tidewater*. In that case, our Supreme Court concluded that certain interpretative policies of the Division of Labor Standards Enforcement

---

[6] The Water Quality Board also argues the trial court's order was flawed because the "trial court essentially ordered the Board to do something it had already done—give Malaga another hearing under the very regulations that were duly adopted and governed Malaga's first hearing." As we discussed above, the Hearing Procedure restricted Malaga's actions beyond the duly adopted regulations. Accordingly, the Water Quality Board's position that a remand is unnecessary on this ground is incorrect.

23.

constituted a void underground regulation. (*Tidewater*, *supra*, 14 Cal.4th at pp. 561, 572, 576.) Despite this finding, the court explained, "while we do not defer to the [Division of Labor Standards Enforcement]'s interpretation of the [Industrial Welfare Commission] wage orders, we do not necessarily reject its decision to apply the wage orders." (*Id.* at pp. 576–577.) It went on to state, "[i]f, when we agreed with an agency's application of a controlling law, we nevertheless rejected that application simply because the agency failed to comply with the APA, then we would undermine the legal force of the controlling law." (*Id.* at p. 577.) Thus, the penalty for adopting a void regulation is not a complete rejection of an agency's actions, but the elimination of any deference to the choice supporting that action.

In *Morning Star*, the case relied upon by the trial court, our Supreme Court again found an agency's interpretation of the law constituted a void underground regulation. This time, the agency in question had concluded that virtually all businesses with 50 or more employees should be subject to a hazardous materials fee. (*Morning Star*, *supra*, 38 Cal.4th at p. 336.) However, in *Morning Star*, the court sent the case back to the agency to conduct a further determination without relying on its void regulation. The court explained it could not determine on the record before it whether the agency's determination had, in fact, been correct. It categorized *Tidewater's* issue as "a simple interpretive policy," where the court was in as good a position as the agency to interpret the law, and contrasted that with *Morning Star's* issue, which it described as calling "for the application of administrative expertise in the first instance" due to the need to compare and contrast the practices of multiple disparate businesses with respect to the law. (*Morning Star*, at pp. 340–341.) Ultimately, the court's opinion drew a line between issues where the record and nature of the relevant determination were sufficient for the court to resolve the legal dispute, and issues where the record to date and the nature of the agency action were insufficient to determine whether the agency had acted appropriately.

In *Reilly v. Superior Court*, 57 Cal.4th 641 (*Reilly*), our Supreme Court again considered how to proceed when a void underground regulation has been utilized, this time in the unique context of the sexually violent predator laws. The case came to the Supreme Court with the People conceding that "the finding in the original assessment protocol used here amounted to an invalid regulation and that its use constituted error," and instead arguing it was erroneous to conclude "an alleged [sexually violent predator] need not demonstrate the materiality of such error in order to obtain dismissal of his [California Sexually Violent Predator Act] petition." (*Id*. at p. 652.) Underlying the dispute was an open issue in the case law concerning how to treat pretrial irregularities in [California Sexually Violent Predator Act] proceedings. (*Reilly*, at p. 652.) Our Supreme Court resolved this open issue by explaining that the need to demonstrate prejudice is governed by the general rule "that nonjurisdictional irregularities in preliminary hearing procedures should be reviewed for prejudice," particularly with respect to "a pretrial challenge that addresses an issue that a subsequent fact finder will reconsider." (*Id*. at p. 653.) After an extensive discussion of case law in the area, the court concluded "that relief arising from use of an invalid protocol in a[ sexually violent predator] evaluation should depend on a showing that the error was material." (*Id*. at p. 655.) In this way, the court could "ensure that meritorious petitions can proceed, while mandating reevaluation, and possible dismissal, where their merit is in doubt," while at the same time ensuring the Legislature's purpose in enacting the [sexually violent predator] statutes is followed by reducing barriers to having the trier of fact ultimately determine each individual's [sexually violent predator] status. (*Id*. at pp. 655–656.)

The sum of these cases shows a gradated process for determining how to proceed if an underground regulation is utilized. In clear cases of pure legal interpretation and pretrial irregularities, the court in its review should undertake to determine whether the agency's actions were flawed. In the case of legal analyses, whether the agency, despite the underground regulation, properly interpreted the statute. In the case of pretrial

25.

irregularities, whether the erroneous regulation caused prejudicial harm. However, in cases where the agency's expertise is required, as opposed to merely utilized, to make quasi-legislative decisions the court should vacate the underground regulation and permit the agency to properly engage in its work.

With this structure in mind, our focus turns to how courts should proceed when the underground regulation relates to procedural factors potentially affecting a trial or hearing. Malaga seeks a straightforward resolution, arguing that under cases like *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 17 and *Pinheiro v. Civil Service Com. for the County of Fresno* (2016) 245 Cal.App.4th 1458, 1471, it is settled that a single violation of the APA requires reversal of the ensuing decision with no further analysis. This claim is fundamentally wrong and suggests a lack of review of these cases. Both *Department of Alcoholic Beverage Control* and *Pinheiro* include specific discussions and rejections of harmless error claims. In *Department of Alcoholic Beverage Control*, our Supreme Court was "not persuaded" by a claim the submission of ex parte communications "was harmless," both because the record did not reflect the content of those communications and because only one party to the proceedings had been permitted to submit such communications. (*Department of Alcoholic Beverage Control*, at p. 17.) Likewise, in *Pinheiro*, this court specifically rejected the argument that relying on extra-record evidence in that case "was harmless." (*Pinheiro*, at p. 1471.) Relying on its extensive discussion of how extra-record evidence related to the key issue of Pinheiro's credibility in the underlying proceedings, this court specifically wrote that "[s]ince credibility was key to the [Civil Service Commission for the County of Fresno]'s overall findings, however, we will not assume the error was harmless." (*Ibid.*) We thus reject Malaga's unsupported proposed resolution.

Within Malaga's argument, however, is a reminder relevant to our determination. Specifically, that as a writ of mandate proceeding under Code of Civil Procedure section

1094.5, the ultimate analysis considers "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion," with an abuse of discretion defined, in part, as failing to proceed in the manner required by law. (Code Civ. Proc., § 1094.5, subd. (b).)

This structure strongly suggests that procedural requirements imposed pursuant to a void underground regulation should be subject to a harmless error analysis consistent with our Supreme Court's analysis in *Reilly*, particularly in a case such as this where the allegations do not imply a fundamental lack of jurisdiction to proceed. Questions such as whether a fair trial was provided are akin to claims of a due process violation. Such questions are, absent exceptional circumstances, subject to a harmless error analysis when a violation is found. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 ["But '[c]ategorization of an error as structural represents "the exception and not the rule." ' [Citation.] '[A] strong presumption' exists *against* finding that an error falls within the structural category, and 'it will be the rare case' where an error—even 'a constitutional violation'—'will not be subject to harmless error analysis' "].) Similarly, the language of Code of Civil Procedure section 1094.5 itself notes that an alleged abuse of discretion must be prejudicial. (Code Civ. Proc., § 1094.5, subd. (b).) Accordingly, absent a basis to treat an underground procedural regulation as an improper legal position, such as that in *Tidewater*, or an agency's exercise of its unique experience, such as that in *Morning Star*, we conclude that the use of a void underground regulation to set hearing procedures is subject to a harmless error analysis.

In this case, we see no reason to review the allegations under either the *Tidewater* or *Morning Star* standards. Although the Water Quality Board contends that it has merely implemented previously adopted regulations—suggesting this case is akin to *Tidewater*—we have already rejected that position above, confirming that the procedures implemented are not purely agency interpretations of existing laws or regulations. Likewise, we have identified no basis in law or logic to conclude that the setting of

deadlines or document submission procedures qualifies as a determination for which an agency has utilized any application of administrative expertise in the first instance. Indeed, hearing procedure and due process concerns are areas the courts are intimately familiar with, perhaps even more so than agencies.

Having concluded a harmless error analysis applies, we must briefly consider the Water Quality Board's suggestion that we should fully resolve this dispute by affirmatively finding that no demonstration of harm was made by Malaga. We decline to do so. The determination whether a procedural error is harmless turns, in part, on facts within the record showing whether the error alleged actually and prejudicially affected the proceedings. For example, in *Reilly*, the court found any error in relying on a void underground regulation harmless because the record demonstrated that a later [sexually violent predator] evaluation had occurred under procedures that were not an underground regulation. (*Reilly*, *supra*, 57 Cal.4th at p. 656.) In this case, Malaga made several arguments to the trial court contending that various aspects of the hearing procedures resulted in prejudicial harm. The trial court, however, relying on the guidance in *Morning Star*, remanded the matter on the bare finding of an APA violation, without considering any of the factual or legal arguments of error raised by Malaga.

As we have concluded that the guidance in *Reilly* is more appropriately applied to the situation at hand, we note that the trial court's reliance on *Morning Star* resulted in a limited analysis that did not fully resolve the issues before it. In the context of this case—where multiple additional and unrelated issues were not reached based on the trial court's remedy—it appears the most efficient course of action is to remand the matter to the trial court to consider whether Malaga has demonstrated the error in this case is not harmless. To the extent factual issues arise in this analysis, the trial court should have the first opportunity to resolve those disputes. And, should the court find any error harmless, it shall then be able to consider and resolve any additional arguments it did not reach given its prior resolution.

## DISPOSITION

The trial court's order is reversed, and the matter remanded for further proceedings consistent with this opinion.

Each party shall bear its own costs.

HILL, P.J.

WE CONCUR:


LEVY, J.


DETJEN, J.